BOARD OF COMMISSIONERS OF THE COUNTY OF
LAKE ET AL. *v.* CITIZENS TRUST AND
SAVINGS BANK ET AL.

[No. 9,769. Filed April 24, 1919. Rehearing denied October 30, 1919. Transfer denied March 16, 1920.]

1. BANKS AND BANKING.—*Insolvency of Bank.—Duty of State Auditor.—Statute.*—Section 4959 Burns 1914, Acts 1893 p. 344, providing that the auditor of state on discovering that it is unsafe or inexpedient for any banking corporation to continue business, or that it is insolvent, he shall report the facts to the prosecuting attorney, etc., is, when the prescribed conditions exist, mandatory, and the auditor has no right to disregard its command and substitute his judgment as to what should be done in the premises, and the action of another bank, on his request, in taking charge of the assets of a bank found to be insolvent was without warrant of law. p. 83.

2. BANKS AND BANKING.—*Insolvent Bank.—Assumption of Liability by Other Banks.—Legality.—Statutes.*—An agreement by two national and two state banks in a city to assume the liabilities of an insolvent bank in such city, and to pay the deficiency in its assets, was illegal and *ultra vires*, under §§4953, 4956 Burns 1914, Acts 1893 p. 344, defining the powers of state banks, and §5136 Rev. St. U. S. (§9661 Comp. Stat. 1916), as to powers of national banks. p. 84.

3. BANKS AND BANKING.—*Insolvent Bank.—Assumption of Indebtedness by Other Banks.—Consideration.*—Where one state

bank, exceeding the powers granted to it by law, voluntarily agreed to assume a portion of the liabilities of another state bank which was insolvent, there was no consideration legally sufficient to support a promise by the assuming bank to pay indebtedness due from insolvent bank to a county, or to support a check given as part performance of such promise.   p. 86.

From Lake Superior Court; *Virgil S. Reiter*, Judge.

Action by the board of commissioners of the county of Lake and others against the Citizens Trust and Savings Bank and others.   From a judgment for defendants, the plaintiffs appeal.   *Affirmed.*

*Ibach, Gavit, Tinkham & Stinson, C. B. Tinkham* and *A. E. Tinkham,* for appellants.
*Gavit, Hall & Smith,* for appellees.

ENLOE, J.—This action was begun in the Lake Superior Court, by the appellants, board of commissioners of Lake county, Indiana, and board of finance of Lake county, Indiana, against the appellees, to recover the sum of $14,741.08, together with interest thereon.   The amended complaint upon which the case was tried was in four paragraphs, the first paragraph being based upon a cashier's check for the sum of $14,741.08 issued by appellee Citizens Trust and Savings Bank, and payable to the order of A. J. Swanson, treasurer of Lake county.   The other defendants were in said paragraph of complaint alleged to be claiming some interest in and to said check and the funds represented thereby, and were made parties to answer to their interests.   The second paragraph of complaint proceeds upon the theory that said Citizens Trust and Savings Bank had and held as a deposit duly made by the treasurer of Lake county, Indiana, the sum of $14,741.08, and also alleged that the other appellees were claiming some interest in and to said deposit, and they were made parties to answer to what interest they had.   The third paragraph of com-

plaint is based upon an alleged promise made by Citizens Trust and Savings Bank to the board of finance of Lake county, Indiana, to pay to said board of finance the sum of $14,741.08, which said sum had theretofore been deposited by the county treasurer of Lake county with the Indiana Trust and Savings Bank, which institution was at the time of the making of said promise alleged to be insolvent. This paragraph also alleged that the other appellees were claiming some interest in said money and were made defendants to answer thereto. The fourth paragraph of amended complaint was based upon an alleged contract or agreement made between the appellants on the one part and the appellees, by and through appellee Citizens Trust and Savings Bank as their agent, of the other part, in and by the terms of which said alleged agreement appellants alleged that said appellees had undertaken and promised to pay to appellants the sum of $14,741.08, being the amount of its deposit with the Indiana Trust and Savings Bank. Answers were filed by appellee Citizens Trust and Savings Bank in four paragraphs. These answers included general denial, no consideration, failure of consideration and that the alleged undertaking was *ultra vires*. The appellees the Indiana Harbor National Bank, First National Bank of East Chicago, and First Calumet Trust and Savings Bank, filed similar answers, to which affirmative answers reply was made in general denial and the issues thus closed. The case was submitted to the court for trial, with the request that the court make its special finding of facts and state its conclusions of law thereon. The court stated its conclusions of law in favor of appellees and that appellants were entitled to take nothing by their complaint. Judgment was rendered accordingly. The appellants thereupon filed their motion for a new trial, which was overruled with the proper exceptions. They have brought the case to this

court and the only error assigned is: "The court erred in overruling appellant's motion for a new trial."

The essential facts of this case are, as found by the court: That on and prior to October 28, 1913, the Indiana Trust and Savings Bank was a banking corporation duly organized under the laws of the State of Indiana and was transacting business as such bank at Indiana Harbor, in the city of East Chicago, Indiana; that on said date said bank was, and for some time prior thereto had been, an insolvent corporation; that on October 29, 1913, the auditor of the State of Indiana did, at the request of the holders of a majority of stock of said bank, appoint the Citizens Trust and Savings Bank to take charge of the assets of said insolvent bank and administer its affairs; that on said date the auditor of state, through his deputy, did physically and personally take charge of the banking house and assets of said Indiana Trust and Savings Bank and did, by and through its said deputy, place the Citizens Trust and Savings Bank in charge thereof; that at said time said Indiana Trust and Savings Bank was a depository of public funds, and then had and held as such depository $14,741.08 of the funds of Lake county, Indiana; that on October 28, 1913, the appellees herein entered into the following agreement, to wit:

"East Chicago, Indiana, Oct. 28, 1913.

Agreement.

"Whereas, Information having come from the Banking Department of the State of Indiana that the Indiana Trust & Savings Bank (No. 106) of Indiana Harbor, Indiana, is in an unsound and insolvent condition and by reason of such information, we, the undersigned, as officers of the following banks, to wit: Indiana Harbor National Bank, Citizens Trust & Savings Bank, First Calumet Trust & Savings Bank, First National Bank, all of East Chicago and Indiana Harbor, believing that

it would be injurious, dangerous and detrimental to the banking interest of said City, and injure the standing and financial condition of the Banks above mentioned to permit the same to be closed by the Auditor of State and a Receiver appointed, and in consideration of such reason and conditions, Therefore, this Indenture Witnesseth:    That the following named Banks, Indiana Harbor National Bank, Citizens Trust & Savings Bank, First Calumet Trust & Savings Bank, First National Bank, have this day entered into the following agreement:    1. The First Calumet Trust & Savings Bank agrees to and assumes ten per cent (10%) of the liabilities of said Indiana Trust & Savings Bank.    2. The First National Bank of East Chicago, Indiana, hereby agrees to and assumes Twenty per cent (20%) of the liabilities of said Indiana Trust & Savings Bank.    3. The Indiana Harbor National Bank of East Chicago, hereby agrees to and assumes Fifty per cent (50%) of the liabilities of said Indiana Trust & Savings Bank.    4. The Citizens Trust & Savings Bank of East Chicago agrees to and assumes Twenty per cent (20%) of the liabilities of said Indiana Trust & Savings Bank.

"PROVIDED, however, that the assumption of said liabilities by the parties hereto shall be exclusive of the capital stock and surplus of said Indiana Trust & Savings Bank.

"It is further agreed by and between the said Banks and the Citizens Trust & Savings Bank, that the last named bank will pay the depositors, upon demand, and other liabilities of said Indiana Trust & Savings Bank, exclusive of the surplus and capital stock of the said Indiana Trust & Savings Bank.

"It is further agreed that the First National Bank, the First Calumet Trust & Savings Bank, and the Indiana Harbor National Bank, shall pay to said Citizens Trust & Savings Bank cash in proportion, as hereinbefore set out to cover the loss, which will be entailed by reason of the liquidation of the said Indiana Trust and Savings Bank, when the amount of said loss shall have been fully ascertained.

"It is further agreed by and between the parties that the Citizens Trust & Savings Bank shall act and be the liquidating agent for all of the Banks,

parties to this agreement, in liquidating the Indiana Trust & Savings Bank.

"It is further provided that each of the above named Banks, who are parties to this agreement, shall designate some person whose duty it shall be, at all times, to keep each of said banks advised as to the proceedings, as they are being carried forward in the liquidation of the said Indiana Trust & Savings Bank by the Citizens Trust & Savings Bank, and to advise with the said Citizens Trust & Savings Bank, relating to the liquidation of the said Indiana Trust & Savings Bank.

"It is further agreed that said person, so named by the different banks, parties to this agreement, shall be consulted on any and all compromises that may be effected on the sales, continuances and renewals of any of the assets of said Indiana Trust & Savings Bank.

"Provided, further that the execution of this agreement shall not in any way relieve any corporation, person or persons, who may in any manner be obligated to any person, corporation, municipality or said bank itself to make good any loss occasioned by any acts of said Indiana Trust & Savings Bank.

"In Witness Whereof, the said several banks above named, by the authority of their said several Board of Directors, duly given, have this day by their proper officials, executed this agreement.

"Indiana Harbor National Bank, By G. J. Bader, Pres.

"First National Bank, By G. J. Bader, Pres.

"Citizens Trust & Savings Bank, By John R. Farovid, Pres.

"First Calumet Trust & Savings Bank, By Walter J. Riley, Vice Pres."

That the appellees Indiana Harbor National Bank, and First National Bank of East Chicago, Indiana, were each on said date national banks duly organized as such under the federal statutes; that the appellees Citizens Trust and Savings Bank and First Calumet Trust and Savings Bank were each on said date banking corporations duly organized under the laws of the State of In-

diana to do a banking business; that on November 6, 1913, the Citizens Trust and Savings Bank, by its representative, appeared before the board of finance of Lake county, Indiana, and announced to said board that it would pay the county said deposit and that it desired and requested that said deposit when paid should be redeposited with it, and also at said time delivered to the board of finance the following letter, to wit:

"Indiana Harbor, Ind., November 6th, 1913.
"Board of Finance of Lake County, Indiana,
    "Crown Point, Indiana.
"Gentlemen:—
    "The affairs of the Indiana Trust & Savings Bank are being liquidated. It is desired to pay off depositors as early as possible. We request that the fund now deposited to your credit, amounting to $14,741.08 and interest, be withdrawn.
    "We would be glad to have you turn this account over to us as liquidating agents.
                    "Yours very truly,
                    "Citizens Trust & Savings Bank,
                            "Liquidating Agents.
                            "By John R. Farovid."

That on November 7, 1913, the appellee Citizens Trust and Savings Bank issued to A. J. Swanson, county treasurer of said Lake county, its cashier's check for the sum of $14,741.08; that said Swanson duly received said check, indorsed the same for deposit in said Citizens Trust and Savings Bank, and duly forwarded it by mail, with deposit slip, to the Citizens Trust and Savings Bank for deposit; that thereafter the Citizens Trust and Savings Bank refused to honor and pay the check, and disclaimed all liability on account thereof, and this suit was brought to enforce payment of the amount named in said check with interest thereon.

The controlling questions arising upon this record are: (1) The legal effect, if any, of the action of the

auditor of state, by his deputy, in placing appellee Citizens Trust and Savings Bank in charge of the business and assets of Indiana Trust and Savings Bank;

(2) The legal effect, if any, of the agreement, *supra,* among the four appellee banks; and

(3) The legal effect, if any, of the oral statements made by, and contained in the letter written by appellee on November 7, *supra.*

That the Indiana Trust and Savings Bank was on October 23, 1913, insolvent, as found by the court, is admitted by all the parties hereto. The statute in force at that time provided, among other things (§4959 Burns 1914, Acts 1893 p. 344): "If it shall appear to the auditor of state, from any examination made, * * * that it is unsafe or inexpedient for any such corporation to continue to transact business, or that it is insolvent, he shall communicate the facts to the prosecuting attorney of the district within which such corporation has its chief office, who shall thereupon be authorized to institute such proceedings against any such corporation as are now or may hereafter be provided by law in case of insolvent corporations, or such other proceedings as the case may require." This statute being designed for the protection of the public, and to safeguard their interest, was, as to the action taken by the state auditor, mandatory, and he had no right to disregard its command, and substitute his judgment as to what should be done in the premises therefor. 2 Lewis', Sutherland Statutory Construction (2d ed.) §627, citing *Hudson* v. *Jefferson Co. Court* (1873), 28 Ark. 359; *Campbell* v. *Brackett* (1910), 45 Ind. App. 293, 90 N. E. 777.

It therefore follows that the action of the Citizens Trust and Savings Bank, in taking possession of the property of Indiana Trust and Savings Bank at the re-

quest of the representative of the auditor of state, was without warrant of law. Legally it did not, and under the circumstances of this case could not, represent any one in the capacity which it attempted to assume.

The act under which appellee Citizens Trust and Savings Bank was organized prohibited said bank from engaging in any business, "except such as is hereby expressly authorized," §4956 Burns 1914, *supra,* 2. and it is nowhere in said act authorized to use and pay out of its funds, in settlement and discharge of the debts of another, for which it was in no way legally liable. §4953 Burns 1914, *supra.*

In this agreement, these appellee banks voluntarily undertook to supply funds, whatever might be necessary, to pay the deficiency of the Indiana Trust and Savings Bank. There is no showing as to the amount of such deficiency, and for aught that appears in this record, the accomplishing of such object might have required the use of every dollar of the surplus of said appellee banks, or even have wrought their insolvency. They were agreeing to spend money, not their own, but belonging to the stockholders and depositors. This they could not legally do.

As to the agreement among the four appellee banks, two of them were national banks and two were organized under state law. They and each of them derived all their corporate rights and powers from the statutes under which they were organized. The managing officers were in effect trustees of the funds and property of each of said banking institutions, to husband and protect the same.

In *Dresser* v. *Traders' Nat. Bank* (1896), 165 Mass. 120, 42 N. E. 567, it is said: "The power to make contracts must, by general principles of law, *be limited to the purposes for which a national bank is organized.*" (Our italics.)

As relating to the powers of national banks, §5136, revised statutes of United States (§9661 Comp. Stat. 1916) provides that such banks have power:

"7th. To exercise by its board of directors, or duly authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the business of banking; by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; by receiving deposits; by buying and selling exchange, coin, and bullion; by loaning money on personal security; and by obtaining, issuing and circulating notes, according to the provisions of this title."

Magee, Banks and Banking (2d ed.) 21, says: "A banking corporation comes severely within the rule that all acts not authorized by its charter, and the law under which it was incorporated are *ultra vires*. The very nature of its business requires a strict enforcement of the law, that its stockholders may not become liable and that the earnings and savings of its depositors may be safely preserved."

In *Commercial Nat. Bank* v. *Pirie* (1897), 82 Fed. 799, 27 C. C. A. 171, it is said: "The first of these assumptions—that the bank had power, under its charter, to guaranty the payment of the indebtedness contracted by Webb for merchandise—was due to a mistake of law, for which Webb is not legally responsible. The act of congress under which the bank was organized confers no authority upon national banks to guaranty the payment of debts contracted by third parties, and acts of that nature, whether performed by the cashier of his own motion or by direction of the board of directors, are necessarily *ultra vires*."

In Magee, Banks and Banking (2d ed.) 92, it is said: "It has been held that the directors have no authority, directly or indirectly, to use any of the funds, or property of the bank, for purposes other than those properly

belonging to the legitimate business of banking. They can make no gifts of the corporate property, unless duly authorized by all the stockholders.

"No appropriation in any manner of the funds or property of the bank can be made by them, unless it is clearly beneficial and for the material well-being of the bank. They are the guardians of the stockholders * * *. If they accept the trust, it is implied that they will use their best efforts to advance and protect the interest of the stockholders. The position being a trust, they are enjoined by law not to use the same in any manner to the injury and detriment of the stockholders or the bank." And on page 94, *supra,* the same author says: "They cannot in any manner appropriate any portion of the property of the corporation for any purpose other than that duly authorized by law." See also, *Larabee* v. *Dolley* (1909), 175 Fed. 365; *Brown* v. *Needles Nat. Bank* (1898), 87 Fed. 430; *Willett* v. *Farmers Sav. Bank* (1898), 107 Iowa 69, 77 N. W. 519; *First Nat. Bank* v. *Converse* (1906), 200 U. S. 425, 26 Sup. Ct. 306, 50 L. Ed. 537; *California Bank* v. *Kennedy* (1897), 167 U. S. 362, 17 Sup. Ct. 833, 42 L. Ed. 198.

In *California Bank* v. *Kennedy, supra,* it is said: "It is settled that the United States statute relative to national banks constitute the measure of the authority of such corporations, and that they cannot rightfully exercise any powers except those expressly granted, or which are incidental to carrying on the business for which they are established." Citing authorities.

Counsel urges that as to appellee Citizens Trust and Savings Bank there was a sufficient consideration to support the giving of the check in question. The 3. record fails to disclose any consideration therefor which was legally sufficient to support a promise by said appellee to pay said indebtedness due

from Indiana Trust and Savings Bank to said county, or to support the check given, as part performance of said promise.

Other propositions discussed become of no controlling influence under the above disposition of questions therein involved, and we need not discuss them.

It follows that the trial court did not err in its conclusions of law.  The judgment is affirmed.

McMahan, J., not participating.