IN RE LIQUIDATION OF FARMERS TRUST COMPANY

HARTZELL v. KASER ET AL.

FEDERAL LAND BANK OF LOUISVILLE, KENTUCKY v. KASER ET AL.

[No. 16,920. Filed December 1, 1942. Rehearing denied December 22, 1942. Transfer denied February 8, 1943.]

694

*Lee J. Hartzell,* of Fort Wayne, *Claude Cline,* of Huntington, and *William C. Goodwyn, J. F. Williamson,* and *J. S. Grimes,* all of Louisville, Kentucky, for appellants.

*Eggeman, Reed & Cleland,* of Fort Wayne, for appellees.

STEVENSON, J.—The legal questions presented by this appeal can be understood best by a recital of the facts out of which the controversy grew. On March 5, 1930, the Farmers Trust Company and the Citizens Trust Company were each operating as banks of discount and deposit under the laws of the State of Indiana, in the City of Fort Wayne. Prior to that date, the board of directors of the Farmers Trust Company had authorized a special committee to investigate the possibility of a consolidation of said bank with some other banking institution in the city. At the meeting of the board of directors on March 5, 1930, a contract with the Citizens Trust Company regarding consolidation was presented to the board of directors of the Farmers Trust Company. A meeting of the stockholders was called March 10, 1930, for the purpose of ratifying this contract. At this stockholders meeting the contract was ratified by more than eighty per cent of the stockholders, and as a result of such ratification the contract was, by the board of directors, ratified and accepted.

This contract provided generally that in consideration of the mutual agreements therein contained:

"That the Citizens Trust Company will well and truly pay or cause to be paid the depositors of the said The Farmers Trust Company on demand the amounts due them in accounts designated commercial deposits, trust deposits, savings deposits, contract deposits and time certificate deposits as the same appear of record on the books of the said The Farmers Trust Company, on the date of this transfer.

"Further, it will likewise pay or cause to be paid the bills payable of said The Farmers Trust Company as the same likewise appear of record."

The contract further provided that in consideration of the payment of the above obligations, the Farmers Trust Company, by and through its board of directors, should execute a promissory note to the Citizens Trust Company "in the full amount of said deposits and bills payable, collateraled and secured by all and singular the assets of said the Farmers Trust Company as the same appear of record on the date of this transfer." It was further provided in the contract that the Farmers Trust Company would at the time of closing "grant, bargain, sell, assign, pay, transfer and deliver unto the Citizens Trust Company as its sole and absolute property, such portions of the notes, securities and other assets owned by the Farmers Trust Company at said closing time as shall be selected by the said Citizens Trust Company," and further agreed that if for any reason the Citizens Trust Company became dissatisfied with any notes or securities acquired by it under the provisions of this contract, that it should have the right at any time on or before September 1, 1931 to return such notes and securities, and the Farmers Trust Company agreed to pay therefor their cash value.

To secure the performance of this agreement, the Farmers Trust Company further agreed "to pledge and

deposit with the Citizens Trust Company at the closing time, all assets of the Farmers Trust Company existing at the closing time not granted, bargained, sold, assigned, paid, transferred and delivered to the Citizens Trust Company . . . , said assets to be known and hereafter referred to as the 'Guaranty Fund.' "

The Citizens Trust Company was given full power and authority to collect these obligations so pledged, and all collections so made by the Citizens Trust Company should be credited on the note of the Farmers Trust Company given to the Citizens Trust Company for which such notes and securities were collateral. It was further stipulated that the Citizens Trust Company should determine on or before September 1, 1931 what securities it would return and it was further agreed not to extend the time of payment on any obligation not accepted by them beyond September 1, 1931. It was further stipulated: "Whenever the Farmers Trust Company shall have paid the Citizens Trust Company in accordance with the terms of this agreement all of its obligations in full, any sum remaining in the Guaranty Fund or property of the Farmers Trust Company held by the Citizens Trust Company as collateral security for its obligation shall be returned to and become the property of the Farmers Trust Company."

The record further discloses that, on September 1, 1931 the Farmers Trust Company executed a certain promissory note payable September 1, 1932 in the principal sum of $575,000.00 as a renewal of the note stipulated in the contract, and this note forms the basis of the cause of action now before this court.

On June 22, 1932, Edward F. Scheumann was appointed receiver of the Citizens Trust Company, and immediately took possession thereof for the purpose

of liquidation. On January 3, 1938, the Department of Financial Institutions of the State of Indiana filed its notice in the office of the clerk of the Allen Circuit Court to the effect that it had taken charge of the Farmers Trust Company for the purpose of liquidation. On February 13, 1938, Carl E. Kaser appellee was appointed special representative for the Department of Financial Institutions to administer the assets of the Farmers Trust Company. On February 26, 1938, the said Carl E. Kaser as special representative filed an inventory of all the assets and liabilities coming into his knowledge and possession, showing a total of assets listed in the amount of $329,658.83, and liabilities in an equal amount, and other additional liabilities listed, including judgments payable, in the amount of more than $22,000.00. This schedule contained the further statement that all of these assets were held by the receiver of the Citizens Trust Company under an alleged pledge and hypothecation to secure the payment of a promissory note. Notice of the filing of this schedule was published, and on March 3, 1938, said Carl E. Kaser, as special representative for the Department of Financial Institutions, filed his schedule of claims, among which was listed the claim of the Federal Land Bank of Louisville, Kentucky, on a deficiency judgment totaling $5,916.74, and also the claim of Edward F. Scheumann as receiver for balance due on note in the principal sum of $326,000.00. The special representative recommended that said claims be allowed without priority or preference.

On March 25, 1938, appellant Lee J. Hartzell and others filed objections to the allowance of these claims, which objections were set forth in nine paragraphs. These objections were for and on behalf of the stockholders in the Farmers Trust Company, and alleged

among other things: (1) A payment of the $326,000.00 note; (2) a transfer and sale of all the assets of the Farmers Trust Company to the Citizens Trust Company in consideration of full payment of their indebtedness; (3) a want of consideration; (4) that said note was executed without authority; (5) that said contract was *ultra vires*. Other paragraphs of answer were addressed to claims not here in contest.

On March 29, 1938, Edward F. Scheumann as receiver of the Citizens Trust Company filed a claim for priority on the note held by him over all other creditors, in which claim he asserts that all the assets of the Farmers Trust Company save and except the stockholders liability were pledged by the Farmers Trust Company to secure the payment of the note sued upon which forms the basis of his claim.

On April 18, 1938, the court ordered alias writs to all creditors and appearances were made thereto by the Federal Land Bank of Louisville among other creditors. On December 15, 1938, the appellant Federal Land Bank filed an answer in two paragraphs. The second paragraph alleged that on February 24, 1927, the Federal Land Bank had loaned $11,500.00 to one Ervin Kaiser and wife, which loan was secured by a first mortgage on certain real estate in Wells County, Indiana. This obligation the Farmers Trust Company assumed and agreed to pay, and which obligation was reduced to a judgment by the Federal Land Bank against the Farmers Trust Company on September 9, 1935. The answer further alleged that there remains unpaid on this judgment approximately $5,900.00, which judgment is a lien upon all the assets of the Farmers Trust Company by virtue of an execution issued upon said judgment as of November 20, 1936. The answer further alleges that the transfer of the

assets of the Farmers Trust Company to the Citizens Trust Company is a fraud upon the creditors and, therefore, null and void. The Federal Land Bank accordingly prayed that the lien of its judgment be adjudged prior and superior to the lien of the Citizens Trust Company.

On the issues presented by these pleadings the case was submitted to the court for trial, and the court after hearing the evidence found for the claimant, Edward F. Scheumann, as receiver of the Citizens Trust Company, and that there was due him upon the note sued upon the sum of $442,828.03. The court further found that the claim of the said Scheumann, as receiver, was secured by the pledge by all the assets of the Farmers Trust Company except sums secured by reason of stockholders liability. The court further found that the claim of said receiver was prior and superior to the claims of all other creditors to the extent of said security so pledged, and that the said objectors Lee J. Hartzell and other stockholders and the Federal Land Bank of Louisville should take nothing by their pleadings. Judgment was entered accordingly. A motion for new trial was filed by the appellant Federal Land Bank of Louisville for the reason that the decision of the court was not sustained by sufficient evidence and is contrary to law. This motion was overruled and the Federal Land Bank of Louisville has appealed. A similar motion was filed by the appellant Lee J. Hartzell and likewise overruled.

The overruling of these motions constitutes the appellants' assignment of error on appeal. On this appeal the appellants urge first that the contract by which the Citizens Trust Company took over the assets of the Farmers Trust Company was a contract for the sale of such assets and the assumption by the Citizens Trust

Company of all of the liabilities of the Farmers Trust Company.

The appellees on the other hand contend that this contract was only a contract of sale as to certain assets, and an agreement to assume certain liabilities, to wit: deposit liabilities and bills payable, as shown by the books of the Farmers Trust Company. The appellees contend that the contract operated to pledge all assets not purchased by the Citizens Trust Company to secure the payment of the liabilities assumed, which liabilities were represented by the original note and the renewal thereof which constitutes the basis of the claim of Scheumann, receiver.

The appellant Lee J. Hartzell and other stockholders similarly situated, contend that the contract between the Farmers Trust Company and the Citizens Trust Company was a contract of purchase and sale of all the assets of the Farmers Trust Company in consideration for which the Citizens Trust Company assumed and agreed to pay all the liabilities of the Farmers Trust Company. The appellant Hartzell, therefore, contends that there was no consideration for the note in suit. The appellant further contends that if there was, in fact, a consideration for the execution of the note, that the Citizens Trust Company, having taken possession of all the assets of the Farmers Trust Company, the note in suit has been fully paid. The appellant makes the further contention that the execution of this note by the Farmers Trust Company was an *ultra vires* act.

We cannot agree with the appellant that this contract was a contract of sale of all the assets of the Farmers Trust Company, in return for their promise to pay all their liabilities. The contract itself specifically provides otherwise. By the terms of

this contract it was expressly stipulated that the Farmers Trust Company would "grant, bargain, sell, assign, pay, transfer and deliver unto the Citizens Trust Company as its sole and absolute property such portions of the notes, securities and other assets" as should be selected by them, and all other assets were pledged as collateral security for the payment of the promissory note, which is executed by the Farmers Trust Company in the amount of the deposits and bills payable which the Citizens Trust Company had promised and agreed to pay. Under the provisions of this contract the Citizens Trust Company did not buy, and was not obligated to buy, all of the assets of the Farmers Trust Company. There is evidence in the record to support the court in its finding that it did not contemplate or make such a purchase. By the express provisions of the contract the Citizens Trust Company did not assume and agree to pay all the liabilities of the Farmers Trust Company. It only assumed and agreed to pay "commercial deposits, trust deposits, savings deposits, contract deposits and time certificate deposits," as the same appear of record on the books of the said Farmers Trust Company on the date of this transfer. In addition to this it further agreed to pay the "bills payable of said The Farmers Trust Company" as the same appear of record on the books of the Farmers Trust Company. It was entirely proper, therefore, for the contracting banks to agree as they did with reference to the methods by which the remaining assets of the Farmers Trust Company should be handled after the Citizens Trust Company had selected those which they desired to purchase outright. Contracts of this character have been frequently before the courts of this State, and have been generally approved. In the case of *South Bend State Bank* v. *Dept. of Financial Inst.*

(1938), 213 Ind. 396, 11 N. E. (2d) 689, the court had before it a case similar in many respects to the one now under consideration. The court said, p. 404:

> "Looking at the contract as a whole, and considering the representation that the appellant was solvent; that it sought to avoid involuntary liquidation; that it desired that its creditors and depositors should be paid immediately; that the appellees agreed to make such immediate payments; that the cashier, assistant cashier, and bookkeeper of the appellant were employed by the appellees to assist in the liquidation, and the many other conditions surrounding the banking situation in South Bend at that time, leads to the inevitable conclusion that the contract did not contemplate an outright sale in the first instance, but was a pledge of the assets for the purposes named."

It is apparent from a reading of this record that the Farmers Trust Company was desirous of discontinuing the banking business. In order to secure the payment of their deposit liabilities and bills payable it was necessary that they either borrow large sums of money or induce some other financial institution to take over these obligations. They accordingly determined to enter into this contract with the Citizens Trust Company rather than borrow $300,000.00, which the record discloses the board of directors had been authorized to do.

On the date of closing, the books of the Farmers Trust Company showed the following liabilities:

| | |
|---|---:|
| "Checking Accounts | $ 336,226.37 |
| Demand Certificates | 11,283.74 |
| Trust Deposits | 25,887.98 |
| Time Certificates | 221,899.33 |
| Special Time Dep's | 28,852.28 |
| Time Sav. Deposits | 355,027.97 |
| Cashier's Checks | 7,655.97 |
| | 986,843.64 |

Bills Payable _____ 194,515.16

$1,181,358.80"

It was for the total amount of these obligations that the first note of the Farmers Trust Company was given. It was to secure the payment of this obligation ██ that the assets of the Farmers Trust Company were pledged. This the bank had unquestioned authority to do. As our Supreme Court has said: "The right of a bank to borrow money and pledge its assets for the payment thereof is beyond serious question." *Shornick, Rec.,* v. *Butler* (1933), 205 Ind. 304, 308, 185 N. E. 111. See also *Wilhelm* v. *Ryband* (1939), 215 Ind. 281, 19 N. E. (2d) 551.

The record discloses that at the time of the execution of the note for the above amount there was delivered to the Citizens Trust Company assets as shown on the books of the Farmers Trust Company in the sum of $1,404,479.61. On the day of the transfer of these assets there was credited on the note an item of $52,074.08 which represented the cash and quick assets that day transferred to the Citizens Trust Company. Payments were made on this note from time to time thereafter as the assets were liquidated until September, 1931 when the balance remaining due on the original note was embodied in a renewal note in the amount of $575,000.00. Further liquidation of the assets operated to reduce this note to the principal sum of $326,000.00 which forms the basis of this claim. As against this amount it still had on hand assets showing a book value of $329,658.83. These assets the receiver of the Citizens Trust Company had been unable to liquidate.

The question, therefore, in its last analysis, is whether or not this note of the Farmers Trust Company

is a valid obligation which the receiver is entitled to enforce. It is our opinion that it is.

A case similar to the case at bar was before the Supreme Court of the United States in the case of *Wyman* v. *Wallace* (1906), 201 U. S. 230, 50 L. Ed. 738. On facts very similar to those involved in this case, the Supreme Court said:

> "We come, then, to the final question in the case, and that is whether the notes executed by the American bank were its valid obligations. And in reference to this question these are the significant facts: The demands against the American bank were pressing. It had not the money with which to meet them. It arranged with the Union bank to advance the money for the payment of all its outstanding obligations. When the Union bank paid these obligations of the American bank it was the same as though it advanced money to that bank to pay them. To reimburse and secure the former the latter bank turned over certain property, and executed these notes for the balance, securing them by a pledge of all its other assets, which were placed in the hands of its president, as trustee.

> "All the stipulations and agreements made by the directors of the two banks were carried out in good faith; and, with full knowledge of what had been done, the stockholders voted for a voluntary liquidation. The borrowing of the money by the American bank did not necessarily put it into liquidation. It had a large amount of assets, and if the real had equaled the nominal value of these assets, it would have been enabled, after discharging its obligation to the Union bank, to continue business. But, on an examination, the stockholders felt that it was wiser to stop at once. But that decision did not at all impugn the wisdom or bona fides of the transaction by which the money was obtained to pay off the pressing demands of the American bank. The question, therefore, is, whether a national bank, finding itself embarrassed, with a large amount of assets, much in excess of its obligations, yet without the cash to make

payment of those which are due and urgent, can borrow to meet those pressing demands. A very natural answer is, why not? It is not borrowing money to engage in a new business. It simply exchanges one creditor for others. There may be wisdom in consolidating all its debts into the hands of one person. At least such a consolidation cannot be pronounced beyond its powers."

It is our opinion, therefore, that the decision of the trial court in holding that the note in suit was a valid obligation of the Farmers Trust Company is supported by the evidence and is not contrary to law.

It is our further opinion that the execution of the note in suit by the officers of the Farmers Trust Company was not an *ultra vires* act. The court was not in error, therefore, in overruling the motion for a new trial by the appellant Lee J. Hartzell.

In addition to the objection raised by the appellant Hartzell, the appellant The Federal Land Bank of Louisville, Kentucky, contends that the court was in error in overruling its motion for a new trial for the reason that the evidence conclusively shows that the obligation due the Federal Land Bank by the Farmers Trust Company was one of the bills payable which the Citizens Trust Company, by their contract, became obligated to pay.

We have searched the record and have been unable to find any evidence which expressly identifies the obligation due the Federal Land Bank as one of the bills payable which appeared on the books of the Farmers Trust Company at the date of its closing. There is evidence from which the court might find that this obligation did not appear on the books of the Farmers Trust Company as one of its bills payable. Since the trial court evidentally found against

the Federal Land Bank on this issue, this court is unable to disturb such finding on appeal.

The appellant The Federal Land Bank of Louisville, Kentucky, further contends that the rules of law governing the validity of the note in suit as heretofore announced in this opinion are not applicable where a bank transfers all of its assets in return for a promise to pay its liabilities. In disposing of this contention, it is sufficient to say that the record in this case discloses that the Farmers Trust Company did not dispose of all its assets under the provisions of the contract, and the rule contended for by the appellant accordingly has no application here.

The court accordingly committed no error in overruling the motion for new trial as filed by the appellant The Federal Land Bank of Louisville, Kentucky.

Finding no reversible error, the judgment of the trial court is affirmed.

Judgment affirmed.

Bedwell, J.—Dissents.

FLANAGAN, C. J.—Not participating.

DISSENTING OPINION

BEDWELL, J.—The opinion of a majority of the court herein sets forth the factual situation involved in this appeal. A summarization of the main provisions of the contract of March 5, 1930, between the Farmers Trust Company and the Citizens Trust Company, discloses the following:

In the preamble it is stated that the Farmers Trust Company desired to sell, assign, and set over to the Citizens Trust Company, all and singular, its assets, and to discontinue its banking business, and under the conditions thereinafter stipulated the Citizens Trust

Company was willing to purchase the same. These conditions of sale and purchase as specified therein were as follows:

(a) The Citizens Trust Company was to pay or cause to be paid deposit accounts of various kinds, due depositors, as the same appeared of record on the books of the Farmers Trust Company on the date of transfer.

(b) The Citizens Trust Company was to pay, or cause to be paid, the bills payable of the Farmers Trust Company as the same appeared of record.

(c) The Farmers Trust Company by its president and secretary and a majority of its board of directors, was to execute a promissory note or notes in the full amount of the deposits and bills payable that were assumed by the Citizens Trust Company, and the same was to be secured as collateral by all and singular the assets of the Farmers Trust Company as the same appeared of record on the date of transfer.

(d) The Citizens Trust Company was to pay three (3) per cent on certain deposits in the Farmers Trust Company at the time of transfer for good will, in three equal installments, six, twelve and eighteen months from the date of transfer of such deposits.

(e) The Farmers Trust Company, in consideration of the foregoing and the covenants of the Citizens Trust Company, agreed that it would at the closing time determined by such contract, grant, bargain, sell, assign, pay, transfer, and deliver unto the Citizens Trust Company as its sole and absolute property, such portion of the notes, securities, and other assets owned by the Farmers Trust Company as should be selected by the Citizens Trust Company and as should equal in value the amount of liabilities of the Farmers Trust

Company that were assumed by the Citizens Trust Company.

(f) The Farmers Trust Company warranted its right, power, and authority to grant, bargain, sell, assign, transfer, and deliver all the property and assets that were granted, bargained, sold, assigned, and delivered to the Citizens Trust Company in accordance with the terms of such agreement, and agreed to warrant and defend the title to such property and assets unto the Citizens Trust Company, its successors and assigns against the lawful claims and demands of any person, firm or corporation.

(g) It was further agreed that if for any reason the Citizens Trust Company was dissatisfied with any notes, securities, or other assets acquired by it under the provisions of such agreement, that it might at any time or times on or before September 1, 1931, return the note, security, or asset so acquired to the Farmers Trust Company, and the Farmers Trust Company agreed to pay the Citizens Trust Company in cash, an amount equal to the value of the notes, securities, or other assets so returned.

(h) The Citizens Trust Company was given the right to renew or extend from time to time any note, security, or asset acquired by it under the terms of the agreement, and to take such renewal at its discretion so that it would be payable to it instead of the Farmers Trust Company.

(i) The Farmers Trust Company, to secure the performance of its agreement, agreed to pledge and deposit with the Citizens Trust Company all its remaining assets that were not granted, bargained, sold, assigned, and delivered to the Citizens Trust Company under the provisions of the agreement that are heretofore set forth.

(j)   The Farmers Trust Company agreed to execute, at the request of the Citizens Trust Company, such instruments of assignment, transfer, conveyance, or endorsement as would be legally sufficient to vest in the Citizens Trust Company full, complete and absolute legal or equitable title in and to all the notes, securities and other assets granted, bargained, sold, transferred, and delivered under the provisions of the agreement, and also notes, securities and other assets held as collateral security thereto.

(k)   It was further agreed that all officers, directors and stockholders should cooperate with the Citizens Trust Company and in good faith maintain the value of the consolidation of the business and assets of the Farmers Trust Company with the Citizens Trust Company. All transfer of stock of the Farmers Trust Company were subject to the approval of the Citizens Trust Company and the Farmers Trust Company was to deliver to the Citizens Trust Company all its books and records of all kinds, including correspondence, and all of the books, records, and correspondence that related to the accounts of depositors and other liabilities assumed by the Citizens Trust Company, or that related to notes, accounts, or assets acquired by Citizens Trust Company which remained the sole and absolute property of the Citizens Trust Company.

While the above does not include all the terms of the agreement between the two banks it does disclose the essential features thereof. After the making of such agreement the Farmers Trust Company ceased to engage in a general banking business. Its president, vice president and secretary, and many of its employees became officers or employees of the Citizens Trust Company. Immediately following such agreement all of the movable assets, other than furniture and fixtures, were

moved to the banking house of the Citizens Trust Company, and the secretary of the Farmers Trust Company, as an employee of Citizens Trust Company, was placed in charge thereof. An advertisement appeared in a Fort Wayne newspaper, on behalf of the Citizens Trust Company, advising the general public that the Citizens Trust Company had acquired the assets and assumed the deposit liabilities of the Farmers Trust Company, and that the business of the two institutions would be consolidated. This was on March 6, 1930, after the foregoing agreement had been signed on March 5.

The actual transfer of the assets of the Farmers Trust Company to the Citizens Trust Company was made as of the hour of the closing of business on March 10, 1930. In addition to the notes, securities, bonds, and accounts that were transferred under such agreement, there was a large amount of real estate owned by the Farmers Trust Company and also certain contracts executed by it for the sale of real estate, that the parties treated as transferred.

I agree with the majority of the court that a determination of the proper construction, validity, and legal effect of this agreement is one of the basic questions involved in this appeal, but I do not agree with the construction thereof as set forth in the opinion of the court.

In construing contracts the leading purpose is to ascertain the intent of the parties. In ascertaining this intent, the court will, if necessary, consider the contract in the light of the position and surroundings of the parties attending its execution. *Ransdel* v. *Moore* (1899), 153 Ind. 393, 401, 53 N. E. 767, 53 L. R. A. 753; *Howard* v. *Adkins* (1906), 167 Ind. 184, 78 N. E.

665; *Warrum* v. *White* (1909), 171 Ind. 574, 577, 86 N. E. 959.

If the language of a contract is at all uncertain or ambiguous, and the parties by their acts and conduct have given it a certain construction, the courts will give great, if not controlling influence to such interpretation in arriving at the true intent of the parties. *Hook Drug Co.* v. *Kandis Bros.* (1930), 91 Ind. App. 472, 477, 169 N. E. 596; *Kann* v. *Brooks* (1913), 54 Ind. App. 625, 101 N. E. 513.

A banking corporation comes severely within the rule that all acts not authorized by its charter, and the law under which it was incorporated are *ultra vires*. The very nature of its business requires a strict enforcement of the law, that its stockholders may not become liable and that the earnings and savings of its depositors may be safely preserved. Magee, Banks and Banking, 2d Ed., p. 21; 7 Am. Jur., Banks, § 160, p. 123; 9 C. J. S., Banks and Banking, § 157, p. 334.

It has been held that the directors have no authority, directly or indirectly, to use any of the funds or property of the bank, for purposes other than those properly belonging to the legitimate business of banking. They can make no gifts of the corporate property, unless duly authorized by all the stockholders. They cannot in any manner appropriate any portion of the property of the corporation for any purpose other than that duly authorized by law. Magee, Banks and Banking, 2d Ed., pp. 92, 94; *Board, etc.* v. *Citizens, etc., Bank* (1920), 73 Ind. App. 76, 85, 86, 123 N. E. 130.

I do not believe that the Citizens Trust Company had any legal right to make a loan of $1,181,359.75 to the Farmers Trust Company.

Among the items of undisputed evidence was the daily statement of the Citizens Trust Company, as

taken from its general ledger, showing its resources and liabilities on March 6, 1930, with the debits and credits to the various items upon such date. The statement of such date showed commercial or checking deposits in the amount of $805,992.47 and total cash on hand and in bank of $337,382.57. The condition as to commercial deposits and cash on hand and in bank was not materially different on the previous day of March 5, 1930.

Under the provisions of the Acts of 1917, ch. 78, p. 189 (Burns' Anno. Ind. Statutes 1926, § 3865), both of these banks, at the time this agreement was made and carried out, was required to maintain a cash reserve in an amount equal to at least twelve and one-half per cent (12½%) of the aggregate amount of their commercial deposits. This would require the Citizens Trust Company on March 6 to maintain a cash reserve of $106,515.89 which could neither be loaned or invested, and since its total cash on hand and in bank was less than $340,000, it could not possibly make a legal loan of its cash in the amount of $1,181,359.75.

A loan by a bank, like any other loan, is the furnishing or delivery of anything, usually money in case of a bank, on the condition or agreement, express or implied, that the thing loaned or its equivalent in kind shall be returned or repaid. *Zurich, etc., Ins. Co.* v. *Safe-T-Kros Drug Co.* (1930), 91 Ind. App. 130, 170 N. E. 351. From this definition it is apparent that it is ordinarily essential to the existence of a loan that there be both an actual delivery of something to another, and a promise of repayment. If these elements are not present the transaction is not a loan no matter how it may be labeled or what it may be called by the parties. The intention of the recipient to make repayment distinguishes a loan from a sale, and it is the

intention that the repayment may be made either in specie or by an equivalent, rather than in specie only, that distinguishes a loan from a bailment, since in a loan, property in the subject-matter passes to the borrower. 9 C. J. S., Banks and Banking, § 383, p. 797, and cases cited.

So if the Citizens Trust Company loaned the Farmers Trust Company $1,181,359.75, then property in that much cash would have to pass from the lender to the borrower. Nor does the evidence justify a conclusion that there was any expectation, on the part of either party to the contract, that the Farmers Trust Company should ever receive or repay this amount. Following the making of this contract the expectation of both parties was that the Farmers Trust Company cease the transaction of all banking business.

Nor do I believe that this transaction, whether considered as a loan or a sale, would be valid as against the rights of creditors having unpaid claims against the Farmers Trust Company at the time the transaction took place. At that time both of these banks were subject to the provisions of ch. 8, § 14 of the Acts of 1873, p. 21 (Burns' Anno. Ind. Statutes 1926, § 3866), which declared void all transfers of notes, bonds, bills of exchange, deposits to its credit, or other assets therein named, after the commission of an act of insolvency or in contemplation thereof, with a view to prevent the application of its assets to the proper payment of its just liabilities, or with a view to the preference of one creditor to another. In the case of *Brighton* v. *White* (1891), 128 Ind. 320, 322, 27 N. E. 620, the Supreme Court, in construing this particular statute, says:

"The statute is strong and its object plain. It means that there shall be no preference of cred-

itors, and that all transfers for the purpose of creating a preference shall be absolutely ineffective. No title can pass. A creditor taking an assignment in violation of the terms of the statute gets no shadow of title. The statute operates upon the creditor as well as upon the bank; it fetters both, the one can not transfer nor the other accept."

By the weight of authority in civil cases involving the meaning of the term "insolvency" as applied to banks, it is held that a bank is insolvent if it is unable to pay its debts in the ordinary and usual course of business. 7 Am. Jur., Banks, § 711, p. 514; Annotation: 85 A. L. R. 812.

If it should be argued that the Farmers Trust Company was not insolvent at the time this agreement was made, and that the agreement was not made in contemplation of insolvency, then it should be noted that the agreement provides for the giving of additional security to the Citizens Trust Company in the future. If the Citizens Trust Company was dissatisfied with any of the securities it claimed were pledged to it, it could return the same and receive additional security or cash, and this could be done whether the Farmers Trust Company remained solvent or became insolvent.

Under the National Banking Act there is a provision concerning the creation of preferences that is quite similar to § 14 of Acts 1873, p. 21. It has been held thereunder that a resolution of the directors of a national bank to suspend its operation constituted an act of insolvency within the meaning of such act. *Hirning* v. *Federal Reserve Bank* (1931), 52 F. (2d) 382, 82 A. L. R. 297.

A bank is in contemplation of insolvency when it is reasonably apparent to its officers that it will presently be unable to meet its obligations and will be obliged

to suspend its ordinary operations. *Armstrong* v. *Chemical Nat. Bank*, 41 F. 234, 6 L. R. A. 226.

As is so convincingly set forth by the appellee in his brief, the Farmers Trust Company at the time this agreement was made, "was a distressed bank and a major portion of its assets frozen." On March 6, 1930, its demand deposits were $312,843.69 and it was required to maintain a cash reserve of $39,105.45. Its total cash on hand as of such day was only $43,176.82 so that it was in no condition whatever to stand a bank run. A resolution had been adopted by its board of directors authorizing its officers to borrow $300,000 from three other banks in the city of Fort Wayne, but there is no evidence that they could obtain the money. In fact, appellee admits in his brief that the evidence shows that it was necessary for the Farmers Trust Company to make this particular agreement, or to take some steps, for the protection of its depositors.

I feel that the evidence is conclusive to the effect that this particular agreement was made either after the Farmers Trust Company had become insolvent, or in contemplation of insolvency, and if it can be construed, as it was construed by the court below, and as it was construed by a majority of this court, as giving a preference to the Citizens Trust Company over the Federal Land Bank of Louisville, which had a valid, outstanding, unpaid and undisputed claim at the time the agreement was made, then the agreement was invalid as creating a preference under the provisions of the statute. Nor do I believe that that portion of the agreement which permitted the Citizens Trust Company to return on or before September 1, 1931, any notes, securities, or other assets, and receive cash therefor, was valid.

By the great weight of authority, with or without

the aid of a controlling statute, a bank whether national or state, has been denied the power to agree to repurchase mortgages, or other securities sold by it, on the ground that such agreement is *ultra vires* and against public policy. See *Rothschild* v. *Manufacturers Trust Co.* (1939), 279 N. Y. 355, 18 N. E. (2d) 527, and annotation in 120 A. L. R. p. 485.

Following the same principle, a bank could not sell all of its assets and agree to repurchase any portion thereof with which the transferee was dissatisfied. An agreement valid and enforceable if made by an ordinary corporation, may, by reason of public policy, be void and unenforceable against a banking corporation. If a bank can sell its assets under a contingent agreement that it will repurchase the same if the buyer is dissatisfied, then there is no way that the exact liabilities of the bank can be determined. Neither the depositors, creditors or public officials could determine its actual condition. Such a contract would be inimical to sound banking and perilous to the interest of depositors and the public. *Awotin* v. *Atlas Nat. Bank of Chicago*, 295 U. S. 209, 211, 55 S. Ct. 674, 676, 79 L. Ed. 1393.

Although it was not discussed in the opinion of the court, I think the main question involved herein, as far as the Federal Land Bank of Louisville, Kentucky, is concerned, is whether its general claim, which existed long prior to these transactions on March 5, 1930, had preference over the claim of the receiver of the Citizens Trust Company. The latter claim was based upon a renewal of the original note that was executed under the agreement of March 5, 1930. Whether the transaction of March 5, 1930, was called a loan or a sale, the evident purpose thereof was to pass all of the assets of the Farmers Trust Company to the Citizens Trust Company, and for the Farmers Trust Company

to cease the transaction of all banking business. There seems to me no valid reason to give to the Citizens Trust Company, as the result of this transaction, a preference over the claim of other existing creditors. Whatever the transaction is called, the Citizens Trust Company had as full control over the assets of the Farmers Trust Company as it could acquire by purchase.

It is a fair construction of this contract that one of the purposes thereof was to create a situation where the Citizens Trust Company could acquire all of the assets of the Farmers Trust Company as owner, in the event banking conditions improved and the assets increased in value, but as lender in the event they continued to deteriorate and the amount of the liabilities exceeded the value of the assets.

I feel that the judgment of the lower court should be reversed and a new trial granted.

NOTE.—Reported in 45 N. E. (2d) 10.