### 6884.   RICE & HUTCHINS ATLANTA COMPANY v. COM-
MERCIAL NATIONAL BANK OF MACON, GA.

1.  Under the provisions of section 5136 of the Revised Statutes of the
United States, a national bank has no power to guarantee the payment
of the obligations of others for their benefit.

2.  The fact that the national bank making the guaranty was a creditor
of the debtor company, and therefore interested in its securing more
money or merchandise, and thus interested in its success, would not
make its guaranty valid and binding; nor would such a guaranty be
valid for the reason that the plaintiff extended credit to the debtor be-
cause of the guaranty of the bank.  *First National Bank* v. *Monroe,*
135 *Ga.* 614, 618 (69 S. E. 1123, 32 L. R. A. (N. S.) 550).

(a)  The facts set forth in the plaintiff's petition do not, when considered
altogether, remove this case from the operation of the rule laid down in
*First National Bank* v. *Monroe,* supra; and, under the ruling in that
case, which is a binding precedent upon this court, the trial judge did
not err in sustaining a demurrer to the plaintiff's petition and in dis-
missing the case.

                    DECIDED MAY 24, 1916.

Complaint; from municipal court of Macon—Judge Chambers.
August 15, 1915.

*John R. L. Smith, Grady C. Harris,* for plaintiff in error.
*Jordan & Lane,* contra.

WADE, J.   Rice & Hutchins Atlanta Company sued the Com-
mercial National Bank of Macon, Georgia, alleging, that during
the years 1912, 1913, and 1914, the Renfroe Company purchased
and received from the plaintiff merchandise amounting (accord-
ing to a bill of particulars attached) to $4,497.24, and, during
the same years, made from time to time various payments thereon,

aggregating $4,316.92, leaving a balance due of $180.32, besides interest, for which the suit was brought. It was further alleged, that the Commercial National Bank guaranteed to the plaintiff, from time to time, payment for the merchandise so sold and delivered, the guaranty being made by its duly authorized officers, specified by name; and that the said guaranties were not made by the defendant bank gratuitously or for accommodation, but were made in its own interest and for its own benefit, and resulted in its benefit to the extent of much more than $180.32; that during the time mentioned the said Renfroe Company was indebted to the defendant bank in the sum of about $18,000, which was secured by a mortgage by the said Renfroe Company to said bank upon the stock of merchandise of the said Renfroe Company, which was practically its only asset, and the goods sold and delivered by the petitioner to the said Renfroe Company became immediately subject to said mortgage in favor of said bank, inasmuch as the assets of the said Renfroe Company were not worth the amount secured by the said mortgage; and thus the placing of the goods purchased from the plaintiff in the stock of the Renfroe Company, subject to the mortgage, redounded to the interest of the bank; that on account of the said mortgage the plaintiff refused to sell on credit the goods finally purchased from it by the Renfroe Company, unless the bank holding the mortgage, to which the goods when delivered would immediately become subject, would guarantee the payment of the purchase-price therefor, and, such refusal being communicated to the defendant bank, the bank "caused said guaranties to be made in order that said the Renfroe Company might obtain goods and continue in business, with a view of discharging its indebtedness to said bank and thus benefiting said bank." The petition further alleges that the Renfroe Company was afterwards adjudged a bankrupt, and that, through bankruptcy proceedings, the bank recovered and received upon its mortgage about $3,000 out of the proceeds of the sale of the above-mentioned stock of merchandise, "which included goods of the value of more than $180.32, purchased and received from petitioner as aforesaid;" that the Renfroe Company had been duly discharged in bankruptcy from all debts provable against it, including the debt of the plaintiff, which debt amounted to $180.32 principal, besides interest, on account of the purchases and sales aforesaid, and that the "said

bank's liability for the same" was "past due and unpaid, and said bank fails and refuses to pay the same;" wherefore the plaintiff prayed for process against the Commercial Bank of Macon, Georgia, etc.

This petition was demurred to on the ground that the allegations were insufficient to set out a cause of action against the defendant, and that the defendant, as a national banking corporation, was wholly without any power or authority to guarantee the indebtedness of the Renfroe Company to the plaintiff. The court sustained the demurrer and ordered the case dismissed at the cost of the plaintiff, and this judgment was excepted to.

It is, of course, conceded by counsel for the plaintiff in error that a national bank is not liable on a mere guaranty, but it is insisted that the allegation in the petition as to guaranties was made in order to explain by what means the defendant bank received and retained the benefits arising from the sale of merchandise by the plaintiff to the Renfroe Company, and it is ably argued by counsel for the plaintiff in error that the obligation relied upon to support the suit was "an implied contract" and a "duty to account" for money received "on the guaranty" by means of the device of guaranty or "in execution of the agreement." It appears to us, however, that the case comes under the decision of our Supreme Court in *First National Bank* v. *Monroe,* supra, in which it was held: "The fact that the bank was a creditor of the Iron Company [the debtor in that case], and therefore interested in its securing more money and interested in its success, would not make the guaranty valid. Nor would the guaranty be valid because the plaintiffs made the loan to the Iron Company because of the guaranty of the bank." The allegations in the petition touching the benefits accruing to the bank by reason of the contract of guaranty are not sufficient to remove the case from the operation of the rule there prescribed. The decisions of the Supreme Court are binding precedents upon this court; and since, in our opinion, the demurrer was properly sustained under the rulings of the Supreme Court above referred to, any other and further discussion would be entirely useless.        *Judgment affirmed.*