**FEDERAL INTERMEDIATE CREDIT BANK OF OMAHA v. L'HERISSON (two cases).**

Circuit Court of Appeals, Eighth Circuit. May 30, 1929.

Nos. 8191, 8192.

E. F. Dougherty, of Omaha, Neb., for appellant and plaintiff in error.

O. D. Olmstead, of Winner, S. D., for appellee and defendant in error.

Before VAN VALKENBURGH and BOOTH, Circuit Judges, and MUNGER, District Judge.

BOOTH, Circuit Judge. Both by writ of error and by appeal review is sought of a judgment in an action for damages for conversion of certain promissory notes. By reason of the statute (45 Stat. 54 [28 USCA §§ 861a, 861b]) abolishing writs of error and substituting appeals, the writ of error will be dismissed and the cause reviewed on the appeal.

The action was commenced by Eugene G. Barnum, as receiver of the Winner National Bank of Winner, S. D., hereafter called the Winner National Bank, against the Federal Intermediate Credit Bank of Omaha, hereafter called the Credit Bank of Omaha, a corporation organized under the laws of the United States, and the Winner Agricultural Credit Corporation of Winner, S. D., hereafter called the Winner Credit Corporation. Barnum was appointed receiver, October 24, 1925, by the Comptroller of the Currency. Subsequent to the commencement of the action the appellee herein was appointed receiver in place of Barnum, resigned, and was substituted as plaintiff. The Winner Credit Corporation made default; the Credit Bank of Omaha answered. The action was tried to the court without a jury, compliance having been had with the statutory requisites. The court made special findings in favor of the plaintiff, and judgment was entered thereon against both defendants.

The Credit Bank of Omaha alone has appealed, and the record shows no severance of the Winner Credit Corporation. We have considered the question of lack of joinder of parties appellant, since it is jurisdictional, though it has not been raised by counsel. We think, however, that the judgment, though joint in form, was in its essential nature sev-

eral; so that an appeal by the Credit Bank of Omaha alone was properly taken. See 34 C. J. § 799, p. 505; 3 C. J. § 961, p. 1008; Cox v. United States, 6 Pet. 172, 8 L. Ed. 359; Winters v. United States, 207 U. S. 564, 28 S. Ct. 207, 52 L. Ed. 340; Lamon v. Speer Hardware Co., 198 F. 453 (C. C. A. 8); National Surety Co. v. Leflore County (C. C. A.) 262 F. 325, 18 A. L. R. 269. See also Hahn v. Sleepy Eye Milling Co., 21 S. D. 324, 112 N. W. 843; Merchants' Nat. Bank v. Stebbins, 15 S. D. 280, 89 N. W. 674; Black Hills Nat. Bank v. Kellogg, 4 S. D. 312, 56 N. W. 1071.

We turn to the merits. Appellant by its assignments of error has suggested very numerous questions which it desires to have considered and determined. But in accordance with well-established rules the review here must be a limited one. When an action at law is tried to a federal court without a jury, stipulation waiving a jury having been filed with the clerk, the questions open for review in the appellate court are limited, first of all, by statute. Revised Statutes, §§ 649, 700, 1011 (28 USCA §§ 773, 875, 879). The statute (section 1011) as construed by us forbids the appellate court to reverse a judgment for any error of fact. A finding contrary to the weight of the evidence is an error of fact. It follows that the appellate court will not review findings to ascertain whether they are in accordance with the weight of the evidence. Errors of law, however, may be reviewed. These may arise in connection with various questions. One such question is expressly stated in the statute: Whether the special findings support the judgment. Another is whether there is any substantial evidence to support the findings. Still other questions of law relate to rulings made in the course of the trial on motions and on the admission or rejection of evidence. But these errors of law, except the one arising out of the question whether the special findings support the judgment, are reviewable only if their occurrence is shown in a properly certified bill of exceptions, and if the particular ground for claiming error is sharply brought to the attention of the court and a ruling had.

If a party seeks to have reviewed the question whether the record contains any substantial evidence to support the findings and judgment against him, it is incumbent upon him to make a motion for judgment in his favor on that ground, or to request a declaration of law to that effect, or to take some other equivalent step, and secure a ruling by the trial court, and to take exception to such ruling.

If a party desires to have reviewed the question of the admissibility of evidence, he should at the proper time on the trial make his objection or his offer of proof as the case may be, and state the ground therefor, and secure a ruling of the trial court.

And finally, if a party wishes to have reviewed questions touching the admissibility of evidence, the assignments of error relating thereto must conform to the rules of the court, if any, regarding the same.

The foregoing rules of practice which have application to the case at bar have been enunciated and applied in a legion of cases. A few typical cases from this circuit are given in the margin.[1] Decisions of other circuits are in accord.

Applying these rules to the case at bar,

---

[1] No review of weight of evidence: Hall v. Houghton & Upp Mer. Co. (C. C. A.) 60 F. 350; Wear v. Imperial Window Glass Co. (C. C. A.) 224 F. 60, 63; Pennok Oil Co. v. Roxana Pet. Co. (C. C. A.) 289 F. 416; Denver, etc., Co. v. Lee (C. C. A.) 18 F.(2d) 11, 15; Southern Surety Co. v. United States (C. C. A.) 23 F.(2d) 55; Akre v. Liberty State Bank (C. C. A.) 24 F.(2d) 816; McFarland v. Central National Bank (C. C. A.) 26 F.(2d) 890.

Question of any substantial evidence to support findings: Seep v. Ferris-Haggerty, etc., Co. (C. C. A.) 201 F. 893; Wear v. Imperial Window Glass Co., supra; United States v. A. T. & S. F. Ry. Co., (C. C. A.) 270 F. 1; Pennok Oil Co. v. Roxana Pet. Co., supra; Hirning v. Live Stock Nat. Bank (C. C. A.) 1 F.(2d) 307; Allen v. Cartan & Jeffrey Co. (C. C. A.) 7 F.(2d) 21; First Nat. Bank v. Litteer (C. C. A.) 10 F.(2d) 447; McFarland v. Central National Bank, supra; Ozark Pipe Line Corp. v. Decker (C. C. A.) 32 F.(2d) 66.

Question whether special findings support judgment: Hill v. Woodberry (C. C. A.) 49 F. 138, 140; Mercantile Trust Co. v. Wood (C. C. A.) 60 F. 346; Churchill v. Buck (C. C. A.) 102 F. 38, 43; Webb v. National Bank of Republic (C. C. A.) 146 F. 717; C. G. W. Ry. Co. v. M., St. P. & S. S. M. Ry. Co. (C. C. A.) 176 F. 237, 242, 20 Ann. Cas. 1200; C. R. I. & P. Ry. Co. v. Barrett (C. C. A.) 190 F. 118, 123; Guaranty Trust Co. v. Koehler (C. C. A.) 195 F. 669; Globe Ind. Co. v. Sulpho-Saline Bath Co. (C. C. A.) 299 F. 219.

Questions of admissibility of evidence and sufficiency of assignments of error relating thereto: First Nat. Bank v. Litteer, supra; Mercantile Trust Co. v. Wood, supra; Ewert v. Thompson (C. C. A.) 281 F. 449; National Bank of Commerce v. First National Bank (C. C. A.) 61 F. 809; Oswego Twp. v. Travelers' Ins. Co. (C. C. A.) 70 F. 225; American Nat. Bank v. National Wall Paper Co. (C. C. A.) 77 F. 85; Gallot v. United States (C. C. A.) 87 F. 446; Davidson S. S. Co. v. United States (C. C. A.) 142 F. 315; Northwestern, etc., Co. v. Great Lakes Eng. Works (C. C. A.) 181 F. 38; Cisco v. Looper (C. C. A.) 236 F. 336; Johnson, etc., Co. v. McManigal (C. C. A.) 288 F. 185; Walton Trust Co. v. Taylor (C. C. A.) 2 F.(2d) 342; Turner v. United States (C. C. A.) 32 F.(2d) 126; Gentry v. Mo. ex rel. Butler (C. C. A.) 32 F.(2d) 159.

it is evident that there can be no review of the question whether the findings or any of them are against the weight of the evidence, by reason of the statutes above cited.

There can be no review of questions as to the admission or rejection of testimony, because compliance has not been had with Rules 11 and 24 of this court; and no sufficient reason appears for waiver of the rules.

The question whether there is any substantial evidence to support the findings of fact is properly for consideration, since a motion for judgment in favor of defendant was made covering this ground, and assignments of error present the question for review.

The question whether the special findings support the judgment is, of course, open to review by virtue of the statutes above cited.

Among the facts found by the court are the following:

The Winner National Bank was, prior to October 23, 1925, engaged in business at Winner, S. D. On that day the board of directors of the bank passed a resolution declaring the bank to be insolvent, and on the next day a receiver was appointed by the Comptroller of the Currency.

The Federal Intermediate Credit Bank of Omaha was, during the time involved in the action, doing business in Omaha.

The Winner Agricultural Credit Corporation was, during the times in question, doing business in Winner, S. D., negotiating loans on agricultural paper and rediscounting such paper exclusively with the Credit Bank of Omaha.

M. P. Dougherty was the president of the Winner National Bank and of the Winner Credit Corporation; but the Winner National Bank was in no way benefited or interested in the transactions of the Winner Credit Corporation with the Credit Bank of Omaha.

Prior to July 28, 1924, the Winner National Bank was the owner and in possession of some 30 promissory notes made by various parties and amounting to $36,135.76.

Prior to the same date, the Winner Credit Corporation had negotiated loans, amounting in the aggregate to $84,997.52, and had rediscounted the same with the Credit Bank of Omaha.

Prior to the same date, the Credit Bank of Omaha had investigated these loans and had learned that some of them were poor, with inadequate security; that in case of some others the debtors had been selling the mortgaged property and not applying the proceeds upon the debt; that in case of still others the debtors had made payments to M. P. Dougherty to be applied upon their notes

which they had executed to the Winner Credit Corporation; that these collections amounted to over $9,000.

On learning these facts, the Credit Bank of Omaha with the approval of its officers sent the following telegram to Mr. Dougherty July 7, 1924:

"Unless you wire us tomorrow, July 8th, that you have started for Omaha and that funds are available here to take up all matured obligations and to pay us proceeds of sales of mortgaged property we will institute drastic action immediately."

A few days later one of the same officers of the Credit Bank of Omaha told Mr. Dougherty over the telephone that unless he came to Omaha and took up all of the obligations of the Winner Credit Corporation, the Credit Bank of Omaha would deny them the privilege of rediscount.

On July 15, 1924, the Credit Bank of Omaha sent to its local attorneys at Winner twenty-four mortgage notes which had been rediscounted with it by the Winner Credit Corporation, with instructions to prepare immediately the necessary papers in foreclosure suits of the several mortgage notes, with attachments or garnishments against the Winner National Bank. This letter of instructions was shown to Mr. Dougherty by one of the local attorneys, and it was agreed between them that the local attorney should arrange a meeting between Mr. Dougherty and officers of the Credit Bank of Omaha for the following Tuesday, at Omaha. Mr. Dougherty went to Omaha, and first met Mr. Newcomb, one of the officers who had sent him the telegram of July 7th; and was told by him of the investigation; and was further told, "You have got to get the bank behind this corporation if we continue to carry this paper." The bank referred to was the Winner National Bank. Mr. Dougherty tried to raise funds in Omaha to take up the notes of the Winner Credit Corporation which had been rediscounted to the Credit Bank of Omaha, but was unable to do so. Mr. Newcomb then told him, "If you will go ahead and put up the Winner National Bank notes, we will carry this over until you can liquidate the Winner Agricultural Credit Corporation. If not, we are going to instruct our attorneys to carry out our instructions in our letter." Mr. Newcomb further told Mr. Dougherty that if he did not do this he (Newcomb) would "break the bank," meaning the Winner National Bank.

On the same day when this conversation was had, July 24, 1924, a meeting was held at which were present the president, vice-presi-

dent, secretary, treasurer, general attorney, manager, and assistant manager of the Credit Bank of Omaha, and Mr. Dougherty. The rediscounts of the Winner Credit Corporation were discussed; and Mr. Dougherty stated that the moneys which had been collected, more than $9,000, had been deposited in the Winner National Bank to the credit of the Winner Credit Corporation. Demand was thereupon made on Mr. Dougherty that he pay over to the Credit Bank of Omaha the money on deposit in the Winner National Bank to the credit of the Winner Credit Corporation. Mr. Dougherty refused, telling them that the Winner National Bank had on hand in cash only $3,754.48, and in correspondent banks $1,862.70, and in the Federal Reserve Bank $279.20; that the Winner National Bank had no sufficient assets to pay the deposit, and if forced to do so, it would mean the closing of the bank. It was finally agreed that Mr. Dougherty should give to the Credit Bank of Omaha notes of the Winner National Bank to secure the notes discounted by the Winner Credit Corporation with the Credit Bank of Omaha. It was further agreed that an officer of the Credit Bank of Omaha should go to Winner, and select from the notes owned by the Winner National Bank the notes to be given as such collateral. An officer of the Credit Bank of Omaha went to Winner, and the note pouch of the Winner National Bank was turned over to him to make selection of the notes. This was done on Sunday by agreement, so that no one should be around. Selection of notes amounting to about $36,000 was made. Mr. Dougherty thereupon stated that before the notes could be taken away, it would be necessary to call a meeting of the directors of the Winner National Bank. This was objected to by the officer of the Credit Bank of Omaha, and no such meeting was called, and the taking of said notes was without the knowledge or consent of the directors of the Winner National Bank other than Mr. Dougherty.

To carry out the purpose of the conversations had at Omaha and the acts of the parties at Winner, an agreement (Exhibit 27) was drawn up and executed. It is set forth, so far as here material, in the margin.[2]

Mr. Dougherty then delivered to the officer of the Credit Bank of Omaha the promissory notes which Mr. Dougherty attempted to pledge (of the securities of the Winner National Bank) as collateral security to the debts and obligations of the Winner Credit Corporation to the Credit Bank of Omaha.

The taking of the notes amounting to about $36,000 from the assets of the Winner National Bank by Mr. Dougherty, and by the officers of the Credit Bank of Omaha, was for the express purpose of securing the indebtedness of the Winner Credit Corporation to the Credit Bank of Omaha. The taking was wrongful, and the Credit Bank of Omaha converted the notes to its own use. At the time of the taking of said notes and the making of the collateral agreement of July 28, 1924, the Winner National Bank did not have sufficient moneys to pay a check for $9,075.-19, the amount of the deposits credited to the Winner Credit Corporation. The Winner National Bank was at that time unable to meet its obligations in the due and ordinary course of its business, and was insolvent; and this was known at the time by the officers of the Credit Bank of Omaha; and the notes of the Winner National Bank were given to the Credit Bank of Omaha by Mr. Dougherty in contemplation of insolvency. Prior to October 23, 1925, the officers of the Winner National Bank demanded of the Winner Credit Corporation and of the Credit Bank of Omaha the return of the said notes which had been given to the Credit Bank of Omaha on July 28, 1924; and some of said notes were returned. On February 2, 1925, the receiver of the Winner National Bank demanded of the Winner Credit Corporation and the Credit Bank of Omaha the return of all of the notes taken under said collateral agreement, but the demand was refused. The value of the notes so taken by the Credit Bank of Omaha and not returned was $23,919.76, plus accrued interest to July 28, 1924, in all $24,651.20.

■ Of the foregoing findings the principal ones attacked as being without support of any substantial evidence are: First, that the collateral agreement of July 28, 1924, was

[2] "This Agreement, made this 28th day of July, 1924, by and between the Winner Agricultural Credit Corporation, hereinafter referred to as the 'Corporation' and Winner National Bank, of Winner, South Dakota, hereinafter referred to as the 'Bank.'

"Witnesseth:

"Whereas the Bank is, or may become, liable to the corporation, by way of endorsement of notes or other instruments, and is, or may

become, otherwise indebted to the corporation, and

"Whereas, it is to the interest of the bank, as well as of the corporation, that said corporation should be fully secured and indemnified for each and every obligation of the bank due, or to become due, to the corporation,

"Now, Therefore, It Is Agreed, that the bank has deposited with the corporation, as collateral security for the payment of every liability,

846

made, and the notes belonging to the Winner National Bank were turned over to the Credit Bank of Omaha for the purpose of securing the notes which the Winner Credit Corporation had discounted with the Credit Bank of Omaha; second, that the Winner National Bank was insolvent at the time when the transactions of July 28, 1924, were had, and known so to be by the Credit Bank of Omaha.

Substantial evidence is found in support of the former of these findings in the wording of the collateral agreement itself of July 28, 1924; in the fact that it was the notes discounted by the Winner Credit Corporation to the Credit Bank of Omaha which were the subject of the investigation by the Credit Bank of Omaha which led up to the transactions of July 28, 1924; in the further fact that the amount of the notes turned over by the Winner National Bank was far greater than the small amount owed by the Winner National Bank to the Credit Bank of Omaha; in the fact that a separate collateral agreement was executed and separate collateral given covering the indebtedness of the Winner National Bank to the Credit Bank of Omaha; in

the fact that prior to the appointment of a receiver for the Winner National Bank the deposit account of the Winner Credit Corporation had been paid in full—moneys which the Credit Bank of Omaha claims belonged to it—yet notes of the Winner National Bank which had been taken by the Credit Bank of Omaha as collateral were still retained by it; in the fact that statements in letters from the Credit Bank of Omaha to the Winner Credit Corporation referred to the notes taken from the Winner National Bank as being held as collateral to the line of discount of the Winner Credit Corporation. There are other facts of like tenor.

The finding as to the insolvency of the Winner National Bank on July 28, 1924, has support of substantial evidence in the fact that for some time prior to July 28, 1924, the drafts of the Winner National Bank had been going to protest for insufficient funds; in the fact that for a considerable period the bank had failed to keep up its reserve in the Federal Reserve Bank, and had received notices of the deficiency covering many 15-day periods; in the fact that letters from the Fed-

---

or liabilities, either direct or contingent, now owing or which may hereafter be owing, whether nor or hereafter contracted, the following described securities, to-wit:

"Thirty-six thousand one hundred thirty-five dollars & 76/100 in notes as listed below and on the reverse hereof (Here follows a list of the notes of various parties.) with the right on the part of the corporation to call for additional security of such kind and value as will be satisfactory to the corporation and, on failure to respond, or, if in the judgment of the corporation, said security or any additions thereto or substitutes therefor, or any part thereof shall have depreciated in value, then the whole of every obligation of the bank to the corporation shall be deemed immediately payable, at the election of the corporation, with full power in the corporation, on the maturity of said indebtedness either by its terms or by election as aforesaid, to at any time sell, and from time to time sell, assign and deliver the whole of said property and all additions thereto and substitutes therefor, or any part of said property, additions and substitutes, at any public or private sale, at the option of the corporation, and without advertising the same, and without notice to the bank, and with the right of the corporation to be a purchaser at any such sale or sales, and in the event of any sale or purchase hereunder, no matter by or to whom made, all notice thereof and any and all equity or right of redemption, whether before or after the sale hereunder, is hereby expressly waived; and, after deducting all legal and other costs and expenses, including reasonable attorney's fees, from the proceeds of such sale or sales, to apply the remainder on any one or more liabilities of the bank whether due or not, as the corporation shall deem proper (making rebate of interest on any demands not matured) and return the surplus, if any, to the bank. The

corporation may, at its discretion, enforce the collection of said security, additions thereto and substitutes therefor, by suit or otherwise, and may surrender, compromise, release, renew, extend or exchange all or any of the same.

"It is Further Agreed between the parties to this Agreement that the corporation may retain the last above described notes and the obligations securing same until full payment has been received by the corporation of all moneys advanced to the bank upon the notes hereinabove described.

"It is Further Agreed and Understood between the parties that the notes purchased or discounted and the notes held as collateral by the corporation shall be held by the corporation under the conditions that demand for payment, notice of default, or non-payment, protest and notice of protest and notice of extension, substitution of other collateral, or other indulgence are waived and that the rights of the holder shall remain undisturbed, notwithstanding any extension of time, substitution of collateral or other indulgence granted by such holder.

"In Witness Whereof, the parties have hereunto caused these presents to be executed on the date and year first above written.

"Winner Agricultural Credit Corporation,
"By M. P. Dougherty, Prest.
"Winner National Bank,
"By M. P. Dougherty.
"For value received, we hereby assign, transfer and set over unto the Federal Intermediate Credit Bank of Omaha, all our right, title, and interest in and under the collateral agreement set forth on the reverse hereof.
"Winner Agricultural Credit Corporation,
"By M. P. Dougherty, Prest.
"Received the above described notes this 28th day of July, 1924.
"Federal Intermediate Credit Bank of Omaha,
"By. F. W. Clark, Jr."

eral Reserve Bank of Minneapolis had been received by the Winner National Bank calling attention to its unsatisfactory financial condition; in the fact that losses and excess expenditures had consumed the surplus of the bank and impaired its capital; in the fact that the bank had insufficient cash assets to run the bank; in the fact that the bank held a large accumulation of past-due paper; in the fact that though the Winner Credit Corporation had by the books approximately $9,000 on deposit with the bank, yet if a check had been presented for that amount on July 28, 1924, the bank would have been compelled to close its doors; in the fact that in entering into the collateral agreement of July 28, 1924, Mr. Dougherty, according to his own testimony, was contemplating the insolvency of the Winner National Bank; in the fact that when Mr. Dougherty reported to the Credit Bank of Omaha that he had been unable to raise money in that city to take up the obligations of the Winner Credit Corporation, one of the officers of the Credit Bank of Omaha remarked in substance that Mr. Dougherty could not borrow money anywhere considering the condition of the Winner National Bank. This remark indicated knowledge of the condition of the Winner National Bank on the part of the Credit Bank of Omaha. There is also evidence that at the conference between Mr. Dougherty and the officers of the Credit Bank of Omaha the financial condition of the Winner National Bank was discussed and made fully known. The secrecy attending the transactions of July 28, 1924, is also significant of the knowledge of the Credit Bank of Omaha. We think the finding of insolvency is not without support of substantial evidence.

Minor findings of fact which have been challenged as being without support of any substantial evidence have been examined. We find the challenges without merit. It is unnecessary to discuss the findings in detail.

With the special findings as they are, we think it cannot be successfully contended that the judgment is not supported by the findings.

█ The powers of a national bank are limited. They are determined by statute, section 5136, Revised Statutes (Title 12, § 24, U. S. C. [12 USCA § 24]). It is not within those statutory powers for a national bank, even though solvent, to lend its credit to another in any of the various ways in which that might be done. Magee, Banks and Banking (3d Ed.) § 248, p. 466; 1 Morse, Banks and Banking (6th Ed.) §§ 65, 169; 1 Bolles, Mod. Law of Banking, p. 237; Merchants'

Bank of Valdosta v. Baird (C. C. A. 8) 160 F. 642, 17 L. R. A. (N. S.) 526; Farmers', etc., Bank v. Bluefield Nat. Bank (C. C. A.) 11 F.(2d) 83, certiorari denied 271 U. S. 669, 46 S. Ct. 483, 70 L. Ed. 1142; People's Nat. Bank v. So. States, etc., Co., 192 N. C. 69, 133 S. E. 415, 48 A. L. R. 519; Board of Commissioners v. Citizens' Tr. & Sav. Bank, 73 Ind. App. 76, 123 N. E. 130; City Nat. Bank v. Morgan (Tex. Civ. App.) 258 S. W. 572; Rice & Hutchins Atlanta Co. v. Commercial Nat. Bank, 18 Ga. App. 151, 88 S. E. 999; Howard & Foster Co. v. Citizens' Nat. Bank, 133 S. C. 202, 130 S. E. 758.

█ A fortiori, a national bank cannot, while it is insolvent pledge its assets as collateral to the debt of another. This requires no argument. Such a transfer would be a plain violation of section 5242, Revised Statutes (Tit. 12, § 91, U. S. C. [12 USCA § 91]). That section reads in part as follows: "All transfers of the notes, bonds, bills of exchange, or other evidences of debt owing to any national banking association, or of deposits to its credit; all assignments of mortgages, sureties on real estate, or of judgments or decrees in its favor; all deposits of money, bullion, or other valuable thing for its use, or for the use of any of its shareholders or creditors; and all payments of money to either, made after the commission of an act of insolvency, or in contemplation thereof, made with a view to prevent the application of its assets in the manner prescribed by this chapter, or with a view to the preference of one creditor to another, except in payment of its circulating notes, shall be utterly null and void."

█ It must be borne in mind that insolvency within the meaning of the statute, section 5242, consists in the inability to meet obligations in the ordinary course of business as they accrue. Roberts v. Hill (C. C.) 24 F. 571; Hayden v. Chemical Nat. Bank (C. C. A.) 84 F. 874; Browne v. Stronach (D. C.) 7 F.(2d) 685.

█ The contention of appellant that the deposit in the Winner National Bank to the credit of the Winner Credit Corporation of the collections made, amounting to approximately $9,000, was a trust fund, and that the collateral agreement of July 28, 1924, was made in consideration of letting this deposit of a trust fund remain in the Winner National Bank fails because it is contrary to the findings of fact. It also fails for another reason. There is no tracing of the collections referred to into any of the assets of the Winner National Bank as they existed on July 28, 1924. And there is no showing that any

specified minimum amount of cash was on hand in the Winner National Bank during all the period from the time the collections were made down to July 28, 1924. See Empire State Surety Co. v. Carroll County, 194 F. 593 (C. C. A. 8); People's Nat. Bank v. Moore, 25 F.(2d) 599 (C. C. A. 8).

Such of the other assignments of error as are available, in view of the rules above mentioned, have been examined and considered. No reversible error has been found.

Judgment affirmed.