NELSON, Respondent v. STADEL, Appellant
(62 N. W.2d 766)
(File No. 9385. Opinion filed February 23, 1954)

**Jackson & Krause,** Lemmon, for Plaintiff and Respondent.

**Morrison & Skaug,** Mobridge, for Defendant and Appellant.

SICKEL, J. This action was brought by Eva Nelson, plaintiff, against G. G. Stadel, defendant, to determine adverse claims to 1,040 acres of land in Corson county. The circuit court decided that plaintiff was the owner of the land under an executory contract of sale, and set aside a quitclaim deed signed by plaintiff after the execution and delivery of the contract, and which purported to cancel the contract. Defendant appealed.

This controversy arises out of the fact that defendant was not the sole owner of the land at the time he entered into the contract of sale with plaintiff. The mineral rights had been reserved by prior owners but were not excepted by defendant in his contract with plaintiff. Defendant had therefore sold to plaintiff rights in the land which he did not own. On April 24, six days after the execution and delivery of the contract, defendant went to plaintiff's farm and she, at his request, accompanied him to the office of his attorney in McIntosh. There is a sharp conflict in the evidence as to what took place at the attorney's office, but the outcome was that plaintiff executed an instrument in the form of a quitclaim deed to the land described in the previous contract, and reciting: "It is the specific intent of this instrument to cancel and remove of record a certain Contract for Deed executed between the grantor and grantee herein on April 18, 1951, now recorded in Book 16 of Miscellaneous Records in the Office of the Register of Deeds of Corson County, South Dakota on page 396 being therein recorded on April 20, 1951 at 8:00 o'clock a. m. and the grantor does hereby specifically release the grantees of all claims by reason of said contract and does hereby remove all cloud on the title to such real estate by reason of the execution of such instrument". This deed, if valid, cancelled the contract of sale by defendant to plaintiff.

Defendant has contended throughout the trial and on this appeal that the validity of the deed cannot be litigated in an action to determine adverse claims to real property, brought under SDC 37.15. In support of this position defendant refers to the well-recognized rule that cancellation of instruments is ordinarily in the exclusive jurisdiction of a court of equity. 12 C.J.S., Cancellation of Instruments, § 2. Under the old chancery practice it was incumbent upon plaintiff to plead the facts relied upon as grounds for setting aside the deed. Such facts were not plead by plaintiff in this action.

SDC 37.15 provides a statutory procedure for determining adverse claims to real property. Such an action may be maintained by any person having or claiming any interest in property and may be brought against any other person

claiming a similar interest. SDC 37.1501. "In such action it shall be necessary for the plaintiff to state in his complaint in general terms only that he has. or claims title in fee to the property, or a lien upon or interest therein as the case may be, * * * and that the action is brought for the purpose of determining all adverse claims to such property * * * and shall call upon the defendants to set forth all their adverse claims to the property described. The defendant in his answer must set forth fully and particularly the origin, nature, and extent of his claim to the property * * *." SDC 37.1507.

In Clark v. Darlington, 7 S.D. 148, 63 N.W. 771, 772, 58 Am.St.Rep. 835, this court considered a similar question of pleading under the adverse claims statute as it existed at the time that case was decided. It was there held that: "The evident purpose of the statute was to authorize one claiming to be the owner of real estate to himself initiate proceedings to test the validity of an adverse claim of 'estate or interest' in such real estate asserted by another; to have the same canceled if unfounded, and thus relieve himself from the annoyance, and his property from the damaging and depreciating effect, of the constant and standing assertion and menace of such unfounded claim. He is not obliged to 'suffer in silence' until such time as the adverse claimant shall see fit to formally and actively predicate judicial or other proceedings upon his claim." As to the pleadings the court adopted the following rule from Ely v. New Mexico & A. R. R. Co., 129 U.S. 291, 9 S.Ct. 293, 294, 32 L.Ed. 688: "* * * an allegation that the defendant claims an adverse estate or interest is sufficient, without further defining it, to put him to a disclaimer, or to allegation and proof of the estate or interest which he claims, the nature of which must be known to him, and may not be known to the plaintiff." To the same effect is Frum v. Weaver, 13 S.D. 457, 83 N.W. 579; Ward v. Brown, 28 S.D. 375, 133 N.W. 699.

Plaintiff's complaint is this action alleged a cause of action under the adverse claims statute. Defendant's answer denied plaintiff's claim of ownership and alleged that defendant is the absolute owner of the land. Statutory procedure requried that defendant also allege in his answer the so-

called quitclaim deed which he claims as the basis for his ownership of the land in question.

■ SDC 33.0914 relates to pleadings in civil actions and provides in part: "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues." It is also provided by SDC 33.1703 that in cases where an appearance has been made: "* * * the Court may grant relief consistent with the case made by the pleadings and papers of the parties, or embraced within the issues presented and considered by the Court, whether or not the same is specifically presented by the pleadings." While defendant's answer was inadequate to set forth fully the origin, nature and extent of his claim under SDC 37.1507, the validity of his deed was within the issues presented, considered and decided by the court, and, according to the rules referred to above, reversible error cannot be predicated upon this procedure.

Appellant also contends that the decision of the circuit court setting aside the release is contrary to the evidence in the following particulars: First, the evidence shows conclusively that the instrument was supported by a sufficient consideration; Second, there is no credible evidence of fraud, mistake or misconduct on the part of the defendant which would justify the cancellation of the release; and Third, the undisputed evidence shows the delivery of the release by plaintiff to defendant. The answer to the third contention of appellant disposes of this appeal.

The evidence viewed in the light most favorable to the plaintiff shows the following circumstances: After the execution of the contract and the payment of the initial consideration of $7,000, plaintiff purchased machinery and seed, and prepared to farm the land. On April 24th defendant told plaintiff that there had been a mistake in the contract for deed and asked her to go with him to the attorney's office

in McIntosh to see what could be done about it. On arriving there the attorney said to plaintiff: "Mr. Stadel sold you something he didn't have", and explained about the mineral rights, mentioning the names of some of those persons who had reserved them in prior conveyances. Plaintiff said she had put quite a little "strength" on these mineral rights because they were paying good prices for them and she was counting on selling part of them to help pay for the land. Plaintiff was told by defendant that he did not think those rights amounted to anything and that oil probably could not be found for many years. To this plaintiff replied that she could not pay the contract price for the land without the mineral rights. It is not claimed by any one that the repayment of the $7,000, or the release of the mortgage and the surrender of plaintiff's $3,000 note, or the disposition of the lease, was mentioned to plaintiff at this conference.

Counsel then said: "I'll fix up this paper and then everything will be all right". He drafted the instrument which has been referred to herein as the release, and told plaintiff to sign it, without explaining to her that it was a quitclaim deed. Plaintiff signed it thinking "it was some kind of agreement, maybe that they could make some different arrangements about the contract for deed". She thought "he was going to do something about my losing those mineral rights". Plaintiff signed the deed, left it on the desk, and then was returned to her home by defendant.

■ The undisputed evidence shows that after plaintiff and defendant reached her farm, and after plaintiff got out of defendant's car, defendant "mentioned that if I decided I wanted to give it up, why to come into Morristown and get the money back, my payment". Plaintiff never accepted a refund of her payments on the contract, and never said she would give up the deal for the land. The evidence is sufficient to justify the decision of the circuit court that the deed in question was not signed or delivered with the intention of cancelling the contract.

The judgment of the circuit court setting aside the quitclaim deed and vesting in plaintiff the equitable title to the land under the terms of her contract for deed, is affirmed.

All the Judges concur.