WESTERN PETROLEUM COMPANY, Plaintiff and Appellee,

v.

FIRST BANK ABERDEEN (N.A.), of Aberdeen, South Dakota, Defendant and Third-Party Plaintiff and Appellant,

v.

EAST SIDE 1 STOP, INC., a corporation; Gordon Diedtrich, a/k/a Gordon Diedrich; Keith Norman; and Loraine Diedtrich; Third-Party Defendants.

No. 14625.

Supreme Court of South Dakota.

Argued Jan. 11, 1985.

Decided May 8, 1985.

William J. Pfeiffer and Forrest C. Allred, Aberdeen, for plaintiff and appellee.

Roy A. Wise of Richardson, Groseclose, Kornmann, Wyly, Wise & Klinkel and R.D. Miller, Aberdeen, for defendant and third-party plaintiff and appellant.

HENDERSON, Justice.

## ACTION

This is an appeal by the Defendant, First Bank of Aberdeen (N.A.), hereinafter denominated the Bank, from a judgment of the trial court which held the Bank liable to Plaintiff, Western Petroleum Co., hereinafter denominated Western, for $17,000 plus interest based on a "letter of credit" issued by the Bank to Western. We reverse.

## PARTIES

Western is a Minnesota corporation authorized to do business in South Dakota. Its business consists of the wholesale distribution of petroleum products. The Bank is a national bank located in Aberdeen, South Dakota. Third-party Defendant, Gordon Diedtrich, is the sole stockholder of East Side 1 Stop, Inc., which is a retail gasoline service station in Aberdeen. East Side 1 Stop, Inc., was incorporated in March 1978 and all of its stock was purchased by Diedtrich in July 1980. Another third-party Defendant, Keith Norman, is Diedtrich's son-in-law and helps operate East Side 1 Stop, Inc. Both Diedtrich and East Side 1 Stop, Inc., are customers of the Bank.

## FACTS

Western initially sold petroleum to Diedtrich, Norman, and East Side 1 Stop, Inc., on a cash-on-delivery basis. The delivery person was to procure cash or a cashier's check before delivering the product; however, on several occasions, a personal check

drawn on East Side 1 Stop, Inc.'s account was tendered and accepted. In November 1980, a representative of East Side approached a Western salesman about receiving deliveries on an open account basis and was told that to do so, Western would need a guaranty from East Side's bank. On November 20, 1980, Diedtrich requested that Gary Wood, an assistant vice-president of the Bank, write a letter to Western which stated in part:

> This letter is to advise you that First Bank (N.A.) Aberdeen will honor any check or checks payable to you up to $17,000.00 for purchase of petroleum products issued by Gordon Diedrich [sic] and Keith Norman doing business as East Side and West Side One Stop of Aberdeen, South Dakota.

Upon receipt of this letter, Western's credit manager contacted Banker Wood and expressed his dissatisfaction with the form of the letter and requested a change in wording. Banker Wood then wrote a second letter addressed to Western, similar to the first, but which stated in part:

> This letter is to advise you that First Bank Aberdeen will guarantee any invoice or invoices up to $17,000.00 for purchase of petroleum products from you by Gordon Diedrich [sic] or Keith Norman doing business as East Side and West Side One Stop of Aberdeen, South Dakota.

Thereafter, Western began delivering shipments on an open account basis. When four shipments made in September and October of 1982 were not paid, Western confronted East Side 1 Stop about payment. After East Side failed to pay, Western approached the Bank about honoring the guaranty and making payment, but the Bank refused.

## DECISION

### I.

MAY A BANK'S LETTER WHICH GUARANTEES THE PAYMENT OF A CUSTOMER'S OBLIGATION BE CONSTRUED AS A LETTER OF CREDIT?

The trial court held that the letter from the Bank to Western was a letter of credit within the purview of SDCL ch. 57A–5 and that it was also a guarantee to Western to pay open account invoices up to $17,000. Western's pleadings, however, did not assert that the letter was a letter of credit and when Western proposed a Conclusion of Law to that effect, the Bank objected thereto. Western failed to amend its Complaint by motion and the Bank contends that the trial court erred because the issue was not raised in the pleadings nor tried by express or implied consent of the parties.

SDCL 15–6–15(b) allows issues not raised by the pleadings to be tried by the express or implied consent of the parties. This Court, in *American Property Services v. Barringer*, 256 N.W.2d 887, 891 (S.D.1977), held:

> The test for allowing an adjudication of an issue under ... SDCL 15–6–15(b) tried by implied consent is whether the opposing party will be prejudiced by the implied amendment, i.e., did he have a fair opportunity to litigate the issue, and could he have offered any additional evidence if the case had been tried on the different issue. (Footnote omitted.)

The Bank asserts that it did not have a fair opportunity to litigate the issue because it was not raised in the pleadings, not addressed in the trial briefs, and no evidence was presented on the issue. The Bank argues that it was not put on notice of the letter of credit issue because Western's Complaint consistently referred to it as a guaranty. The Bank cites *Gross v. Gross*, 355 N.W.2d 4, 8 (S.D.1984), which held: "The purpose of pleadings is to establish the issues to be tried and to advise the opposing party of the allegations and evidence that must be met." It is argued by Bank that since Western failed to advance an alternative theory and failed to amend its pleadings to conform to the evidence, its action must be treated as based on a guaranty and not a letter of credit. The Bank also maintains that the issue was not tried by express or implied consent because neither litigant presented evidence

concerning the letter as a letter of credit. In sum, the Bank advocates that the trial court erred in holding the letter to be a letter of credit because the issue was not raised in the pleadings; not tried by express or implied consent; and such an implied amendment would be prejudicial.

Western, in contravention, argues that it was not required to allege that the obligation sued on was a letter of credit but need only file a pleading containing "a short and plain statement of the claim showing that the pleader is entitled to relief, and ... a demand for judgment ...." SDCL 15–6–8(a). Western maintains that it is obvious that the letter is a letter of credit and since it was attached to the petition and referred to as a letter of credit at Banker Wood's deposition and at a pretrial conference, the Bank cannot now claim to be taken by surprise. Western also claims that it is hard to imagine any additional evidence the Bank could have presented on the letter of credit issue, in light of counsel's and the court's examination of the Bank's president, Thompson. Western thus is contending that the trial court's ruling is not in error because the Bank had notice of the issue and therefore a fair opportunity to litigate the same and could not have offered any additional evidence on that issue.

█ In *Nelson v. Stadel*, 75 S.D. 218, 221, 62 N.W.2d 766, 768 (1954), this Court affirmed the trial court's ruling on the validity of a quit claim deed although the pleadings did not fully set forth the nature of the claim. The Court held the validity of the deed "was within the issues presented, considered and decided by the court ...." In the present case, the validity of the letter as creating liability by the Bank for East Side 1 Stop's debts to Western was within the purview of "the issues presented, considered and decided by the court." We find no abuse of discretion in the trial court's holding that the issue was tried by the parties' express or implied consent. *Bucher v. Staley*, 297 N.W.2d 802 (S.D. 1980).

We now address the trial court's holding that the letter in question was a letter of credit and also a letter of guaranty. The Bank contends that the determination of the letter as a guaranty within SDCL 56–1–1 or as a letter of credit within SDCL 57A–5–103(1)(a) must be made in light of the intention of the parties. The Bank points to Western's request for a guaranty, the letter's reference to a guaranty, and Western's demand for payment from the Bank only after the principal debtors failed to pay. The Bank also asserts that its failure to follow normal procedures for issuing a letter of credit supports its contention that the parties intended the Bank to be only secondarily liable and that the letter was therefore a letter of guaranty.

Western advocates that the intentions of the parties are irrelevant because the letter falls within the definition of a letter of credit set forth in SDCL 57A–5–103(1)(a) and that the statute therefore controls. It is asserted that SDCL ch. 57A–5 does not require any "particular form of phrasing" or that the beneficiary must first look for payment from the issuer of the letter.

█ The universally recognized distinction between a letter of credit and a guaranty is that the former creates a primary liability while the latter creates a secondary liability. *See Prudential Ins. Co. of America v. Marquette Nat'l Bank of Minneapolis*, 419 F.Supp. 734, 735 (D.Minn. 1976); *Barclays Bank D.C.O. v. Mercantile Nat'l Bank*, 481 F.2d 1224, 1236 (5th Cir.1973), *cert. dismissed*, 414 U.S. 1139, 94 S.Ct. 888, 39 L.Ed.2d 96 (1974); *First Nat'l Bank of Council Bluffs v. Rosebud Housing Authority*, 291 N.W.2d 41, 46 (Iowa 1980); 50 Am.Jur.2d *Letters of Credit* § 5 (1970); 38 Am.Jur.2d *Guaranty* § 2 (1968). South Dakota law recognizes this distinction and defines a guaranty as "a promise to answer for the debt, default, or miscarriage of another person." SDCL 56–1–1. Except as otherwise provided, "a guaranty must be in writing and signed by the guarantor...." SDCL 56–1–4. Letters of credit are governed by SDCL ch. 57A–5 and are defined in SDCL 57A–5–103(1)(a) as

an engagement by a bank or other person made at the request of a customer

... that the issuer will honor drafts or other demands for payment upon compliance with the conditions specified in the credit. A credit may be either revocable or irrevocable. The engagement may be either an agreement to honor or a statement that the bank or other person is authorized to honor.

"[N]o particular form of phrasing is required for a credit. A credit must be in writing and signed by the issuer...." SDCL 57A–5–104(1).

■ This Court, in interpreting the predecessor of SDCL 56–1–1, held:

[A guaranty] is a contract on the part of one person which is collateral to a primary or principal obligation on the part of another.... However, because the term "guaranty" or "guarantee" is not always employed in commerce in an unequivocal sense, the employment of that term is not conclusive of an intent to assume a mere collateral obligation, and it is permissible to read a writing in the light of all of the surrounding circumstances to determine whether an original and independent obligation, rather than a mere guaranty was intended.

*Miners & Merchants Savings Bank v. Comer*, 82 S.D. 1, 3–4, 140 N.W.2d 390, 391 (1966) (citations omitted). A letter of credit and a guaranty are thus two separate and distinct legal instruments. "[T]here is a vast difference between a guaranty and a letter of credit." J. Halls, *The Uniform Commercial Code in Minnesota: Article 5—Letters of Credit*, 50 Minn.L.Rev. 453, 454 n. 3 (1966). A true letter of credit is not a guaranty. White & Summers, *Handbook of the Law Under the Uniform Commercial Code* § 18–2, at 713 (2nd ed. 1980). The former creates a primary responsibility to pay and the latter creates a responsibility to pay only if another does not. *New York Life Ins. Co. v. Hartford Nat'l Bank & Trust Co.*, 173 Conn. 492, 498, 378 A.2d 562, 566 (1977); *Walton v. Piqua State Bank*, 204 Kan. 741, 749, 466 P.2d 316, 324–25 (1970); *Dubuque Packing Co., Inc. v. Fitzgibbon*, 599 P.2d 440, 441 (Okla.App. 1979). The trial court, however, ruled in

Conclusion of Law XXXIII: "That Exhibit #1 was a letter of credit pursuant to SDCL Chapter 57A–5;" and in Conclusion of Law XXXIV: "That Exhibit #1 was a guarantee to Plaintiff that, if open account invoices were not paid by Third-Party Defendants Diedtrich and Norman, Defendant would by [sic] the same up to $17,000.00." Said conclusions of law were theoretically in conflict as they could not coexist and thus are in error as a matter of law. We deem this instrument to be a letter of guaranty both by its express language and the conduct of the parties. Western first made a demand for payment of invoices on the Bank's customer; only after the Bank's customer failed to make the requested payment did Western then make a demand for payment on the Bank. A letter of credit contemplates presentment of a draft or other form of demand for payment to the Bank, who would be liable in the first instance. We note that Western asked for a guaranty and expressed the kind of language they wanted in the letter to Bank's official. The Bank promised to pay if Gordon Diedtrich or Keith Norman, in effect, did not pay. The Bank did not agree to pay in the first instance, but only guaranteed payment. This instrument, like the instrument construed in *Wichita Eagle & Beacon Publishing Co., Inc. v. Pacific Nat'l Bank of San Francisco*, 493 F.2d 1285, 1286 (9th Cir.1974), thus "strays too far from the basic purpose of letters of credit," and based on the instrument and the intent of the parties as evidenced by their actions, we deem it to constitute a guaranty.

II.

CAN A NATIONAL BANK BE ESTOPPED FROM ASSERTING ITS LACK OF AUTHORITY TO GUARANTEE DEBTS OF ITS CUSTOMER?

We first observe that national banks derive their power from 12 U.S.C.A. § 24 (1945). This statute does not grant the authority to guarantee debts of another. It is therefore generally held that "a national bank cannot lend its credit by guar-

anteeing the debt of another solely for his benefit." 9 C.J.S. *Banks and Banking* § 661, at 1214 (1938). *See also, Kimen v. Atlas Exchange Nat'l Bank of Chicago,* 92 F.2d 615 (7th Cir.1937), *cert. denied,* 303 U.S. 650, 58 S.Ct. 746, 82 L.Ed. 1110 (1938); *Berylwood Inv. Co. v. Graham,* 43 Cal. App.2d 659, 111 P.2d 467 (1941); *Cervenka v. Lawndale Nat'l Bank,* 299 Ill.App. 621, 20 N.E.2d 314 (1939); *First Empire Bank v. Federal Deposit Ins. Corp.,* 572 F.2d 1361, 1367 (9th Cir.1978), *cert. denied,* 439 U.S. 919, 99 S.Ct. 293, 58 L.Ed.2d 265 (1978). "A national bank has no power to lend its credit to any person or corporation, or to become guarantor of the obligations of another...." 7 Michie, *Banks and Banking* § 163, at 279 (1980) (footnotes omitted). Two exceptions to this rule do exist. A national bank may guarantee the debts of another if done in the ordinary course of banking or if "it owns or has an interest in the obligation guaranteed." *Id.* at 279–80. It is also said that "a bank may also become liable because the benefits of the transaction have inured to it as a result of its guaranty or indorsement, which consequence would render it highly inequitable for the bank to repudiate the transaction...." 10 Am.Jur.2d *Banks* § 300, at 268 (1963).

The trial court found that the letter in question allowed Diedtrich and Norman to continue in business longer than they could have without it; that they deposited funds with the Bank and made payments on loans to the Bank during this time; that the Bank earned money on the deposited funds; and that none of the above would have occurred if the Bank did not issue the letter. The trial court thus concluded, in Conclusion of Law XXXVI, that the Bank received material benefits by virtue of issuing the letter to Western and was therefore estopped from raising the defense of ultra vires. We disagree.

The Bank cites extensive authority for the proposition that an ultra vires act of a national bank is totally void and unenforceable even under the doctrine of equitable estoppel. The Bank does concede, however, the validity of the two exceptions noted above. The trial court's ruling appears to be that the guaranty was not issued for the sole benefit of the debtor. Rather, the trial court's finding is that the Bank had an interest in the obligation guaranteed and derived benefits therefrom and thus fell within one of the two defined exceptions. The Bank contends that the facts of this case do not support the decision below. Bank asserts that it did not own or have an interest in the petroleum products supplied to Diedtrich and thus does not fall within the stated exception.

> [T]he fact that a national bank is creditor of a debtor company, and interested in its securing money or merchandise, does not make the bank's guaranty binding, nor would such guaranty be valid because plaintiff extended credit because of it.

7 Michie, *Banks and Banking* § 163, at 281 (1980) (footnote omitted). The Bank also argues, in the alternative, that enforcement of the ultra vires guaranty is against public policy because these guaranties are liabilities that are not reflected in the Bank's accounting system and the general public is therefore deceived about its financial stability.

Western counters that the trial court's ruling is correct under the facts of this case and it cites respectable authority for enforcing a national bank's ultra vires act when the bank had or received some interest, benefit or consideration from the act. Western contends that failing to enforce the guaranty would be tantamount to commercial piracy.

■ The trial court found that the Bank had been benefited by the issuance of the letter because it allowed Diedtrich to continue to run his business and make deposits and loan repayments to the Bank. The Bank, it is clear, did not own or have a security interest in the petroleum products delivered on credit to Diedtrich because of this letter. We conclude that the facts of this case do not fall within the two exceptions to the general rule. Neither party has maintained that this debt was guaranteed in the ordinary course of banking.

And it appears to us that the Bank did not have an interest in the petroleum products delivered to Diedtrich, nor was it benefited thereby. By the issuance of the letter, no consideration flowed to the Bank, no property was transferred to it, no security interest was created, and no direct pecuniary interest arose. Simply because the Bank was a creditor of Diedtrich and interested in his success does not justify a legal condonation of an ultra vires act. *Rice & Hutchins Atlanta Co. v. Commercial Nat'l Bank*, 18 Ga.App. 151, 153, 88 S.E. 999, 1000 (1916).

> When the letter [of guaranty] is not purchased, but is purely an accommodation, or simply a guaranty of the payment of an account to be created in the future, it is not binding on a national bank, for such an institution has no power to thus jeopardize its capital. Such transactions are not necessary to the exercise of powers granted to national banks, and are therefore without their charter powers, and invalid.

*Thilmany v. Iowa Paper-Bag Co.*, 108 Iowa 333, 336, 79 N.W. 68, 69 (1899) (cited with approval in *First Nat'l Bank of Council Bluffs v. Rosebud Housing Authority*, 291 N.W.2d 41, 46 (Iowa 1980)).

Deeming the resolution of these two issues decides the four issues addressed in both briefs, we deem it unnecessary to treat the other two issues.

Reversed.

WOLLMAN and MORGAN, JJ., concur.

FOSHEIM, C.J., and WUEST, Circuit Judge, Acting as Supreme Court Justice, dissent.

WUEST, Acting Justice (dissenting).

I dissent.

The trial court found the bank received material benefits by issuing the letter to Western. By keeping Diedrich and Norman in business longer, the bank was able to collect more money on its loan to them. In addition, the bank earned interest on their deposits. This court reviews a trial court's findings of fact under the "clearly erroneous" standard and overturns a trial court's conclusions of law only when it has erred as a matter of law. *Wefel v. Harold J. Westin & Associates, Inc.*, 329 N.W.2d 624 (S.D.1983); *Hartpence v. Youth Forestry Camp*, 325 N.W.2d 292 (S.D.1982).

In my opinion, the bank was not performing an act of charity when this letter was written. They wanted to keep the parties in business so they could collect an apparent shaky loan. The trial court was not "clearly erroneous" nor was it wrong in applying estoppel. It was highly unequitable for the bank to repudiate the transaction and it should be held liable. *See* 10 Am.Jur.2d *Banks* § 300 (1963). As a matter of plain honesty, the bank should be held liable.

I am authorized to state that Chief Justice FOSHEIM joins in this dissent.