ROBBINS & STEARNS LUMBER
COMPANY, Plaintiff–Appellant,

v.

Graham THATCHER and Anna Marie
Thatcher, individually and Graham
Thatcher and Anna Marie Thatcher,
d/b/a Anakota Galleries and The Main
Framer, Defendants–Appellees.

No. 16799.

Supreme Court of South Dakota.

Considered on Briefs Feb. 14, 1990.

Decided March 28, 1990.

Wynn A. Gunderson of Gunderson, Palm-
er, Goodsell & Nelson, Rapid City, for
plaintiff-appellant.

James W. Olson of Wilson, Olson &
Nash, Rapid City, for defendants-appellees.

MILLER, Justice.

## ACTION

Robbins & Stearns Lumber Company (R & S) appeals from a summary judgment in favor of Graham and Anna Marie Thatcher in R & S's action for a debt due on an account. We reverse and remand.

## FACTS

Although the precise details are unclear, Graham Thatcher was apparently involved in two corporations known as "Anakota Leasing Corp." and "Anakota Arts Ltd." Anakota Leasing Corp. had two divisions called "Anakota Galleries" and "The Main Framer." On August 30, 1985, Thatcher opened a business account with R & S in the name "Anakota Arts." The account was assigned account number 88. In order to open the account, Thatcher completed a document captioned "Request for Charge Accommodations." Nothing in that document indicates that "Anakota Arts" was a division of Anakota Leasing Corp. An affidavit of one of the R & S employees disclaims any knowledge of the existence of Anakota Leasing Corp. or Anakota Arts Ltd. until December 1987. Another employee's affidavit states that, "[a]t no time before, during, or after that request [for charge accommodations] did defendant indicate that Anakota Arts was in reality Anakota Arts Ltd., a delinquent corporation which filed with the Secretary of State's office on February 1, 1982."

On August 1, 1986, Thatcher made an application for credit to open a second account with R & S in his own name. It was assigned account number 3829. Along with the credit application, Thatcher signed a document captioned, "Terms and Conditions of Credit." R & S contends that this document is, in reality, a guaranty. Therein, Thatcher agreed to, "personally guarantee collectively and individually the full and immediate prompt payment to Robbins & Stearns Lumber Company, Inc. of *all indebtedness heretofore and hearafter [sic] incurred* for the purchase of materials and related items." (emphasis added).

Thatcher subsequently became delinquent in making payment on his accounts. On December 9, 1987, R & S filed a complaint against Graham Thatcher and Anna Marie Thatcher, d/b/a Anakota Galleries and The Main Framer for the balance due on the accounts plus costs and interest. Thatcher's answer raised the affirmative defense that the debt owed R & S was a corporate debt and not a personal obligation because Anakota Galleries and The Main Framer were divisions of Anakota Leasing Corp. R & S was later permitted to file an amended complaint against Thatchers individually and d/b/a Anakota Galleries and The Main Framer.

The trial court ultimately entered summary judgment for Thatchers finding that the guaranty Thatcher executed in August 1986 guaranteed only his personal obligation on account number 3829. The trial court also granted judgment for R & S against Anakota Leasing Corp. (never a named party to the suit) d/b/a Anakota Galleries and The Main Framer in the amount of $2,477.31 plus costs and interest. Finally the trial court dismissed R & S's complaint against Thatchers individually and d/b/a Anakota Galleries and The Main Framer. R & S appeals.

## ISSUE

WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR THATCHERS?

In reviewing a grant or a denial of summary judgment under SDCL 15–6–56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which

supports the ruling of the trial court, affirmance of a summary judgment is proper.

*Pickering v. Pickering,* 434 N.W.2d 758, 760 (S.D.1989) (citations omitted).

R & S argues that the trial court erred in granting summary judgment because genuine issues of material fact are present. R & S contends that these issues center on two points. First, whether the purported guaranty signed by Thatcher in August 1986 covered only his personal account number 3829 or whether it also guaranteed payment on his business account number 88? Second, whether Thatcher advised R & S that it was dealing with a corporate entity when he opened his business account in August 1985?

## SCOPE OF THE GUARANTY

■ A guaranty is a promise to answer for the debt, default or miscarriage of *another. Western Petroleum Co. v. First Bank Aberdeen,* 367 N.W.2d 773 (S.D. 1985); SDCL 56–1–1. It is a contract on the part of one person which is collateral to the principal obligation *of another. Western Petroleum Co., supra.* The liability of a guarantor will not be enlarged beyond the plain and certain import of the guaranty contract and any ambiguous or uncertain terms in a guaranty will be interpreted most strictly against the party who prepared it. General Elec. *Credit Corp. of Tenn. v. Larson,* 387 N.W.2d 734 (N.D. 1986). *See e.g., International Multifoods Corp. v. Mardian,* 379 N.W.2d 840 (S.D. 1985) (unequivocal language of guaranty controls liability of guarantor).

In this instance, Thatcher signed a document in August 1986 guaranteeing payment of all indebtedness incurred by the principal debtor. However, the "principal debtor" is never identified in the document. Since a guaranty is a promise to answer for the debt of another, it is questionable as a matter of law whether the document is a guaranty when the "other" or "principal debtor" is not identified.

■ Even if the document is viewed as a guaranty, there is absolutely no language in the instrument plainly indicating that Thatcher was personally guaranteeing payment on his business account number 88. Accordingly, there is no genuine issue of material fact. The trial court correctly held as a matter of law that the guaranty, if it guaranteed anything, guaranteed only the personal obligation of Thatcher on his personal account number 3829.

## ADVICE TO R & S THAT IT WAS DEALING WITH A CORPORATE ENTITY.

As its second contention, R & S asserts that when Thatcher opened his original business account number 88, he never revealed that he was acting on behalf of a corporate entity. Accordingly, R & S argues that the issue of whether Thatcher did so advise R & S is a genuine issue of material fact precluding summary judgment.

The rule that one who acts as agent for another in making a contract is individually liable thereon if, at the time of making the contract, he fails to disclose his agency and the identity of his principal, has been applied to corporate officers and directors acting for corporations the existence of which has not been disclosed. Thus, where directors or officers contract with a third person who is unaware of the existence of the corporation and to whom no disclosure of its existence is made, the director or officer is personally liable on the contract.

18B Am.Jur.2d *Corporations* § 1833 (1985). *See also* 3A W. Fletcher, Cyclopedia of the Law of Private Corporations § 1120 (1986) (one who claims he is acting in corporate capacity has duty to disclose he is contracting as agent of corporation and not as individual).

This court recognized the foregoing principles in *The Collegian v. Hileman,* 88 S.D. 601, 226 N.W.2d 163 (1975), wherein a newspaper brought an action on a debt due for advertising services. The defendant contended that the advertising was furnished to a business owned by a corporation in which he was a stockholder and officer. This court found the evidence sufficient to sustain the trial court's determi-

nation that the newspaper relied upon the defendant's credit and that the defendant had failed to advise the newspaper of his corporate capacity prior to the time payment for the advertising became due. Therefore, we found the defendant personally liable for the debt due. *Accord, Cooper v. Hileman*, 88 S.D. 516, 222 N.W.2d 299 (1974) (liability imposed on agent who fails to disclose agency or principal before contract is executed).

 In this instance, R & S specifically asserted by affidavit that Thatcher never disclosed his corporate capacity or the corporate entity when he opened his original business account number 88. Under *The Collegian,* and *Cooper,* this failure could clearly render Thatcher individually liable for any corporate indebtedness to R & S. Thus, there is a genuine issue of material fact which precludes summary judgment.

Reversed and remanded.

WUEST, C.J., and MORGAN and SABERS, JJ., concur.

HENDERSON, J., concurs with writing.

HENDERSON, Justice (concurring).

In concurring with this opinion, which reverses a summary judgment involving individual liability vis-a-vis corporate liability, I refer to my dissent in *Baatz v. Arrow Bar*, 452 N.W.2d 138 (S.D.1990), wherein this Court affirmed summary judgment, holding for a corporate body as distinguished from individual liability. Piercing these corporate veils are difficult and *Baatz* set forth six criteria to do so. *Baatz* involved a tort action, whereas this action sounds in contract. Here, the corporate entity must have, we hold, disclosed its corporate capacity. In *Baatz?*

"This even-handed Justice,
Commends the ingredients of our poison'd chalice
To our own lips."

Shakespeare:
Macbeth I. vii.

I concede that the facts, in these two cases, are quite dissimilar. However, in both cases an intent existed to hide behind a corporate veil.